[L. A. No. 291.   Department One.—July 9, 1897.]

EDITH A. MITCHELL, APPELLANT, *v.* J. F. WIN-NEK ET AL., CONSTITUTING THE BOARD OF EDUCA-TION OF SAN DIEGO COUNTY, RESPONDENTS.

COMMON SCHOOLS — CERTIFICATE OF GRAMMAR GRADE — RIGHT OF GRAD-UATE FROM STATE NORMAL SCHOOL—POWER OF BOARD OF EDUCATION —INVALID RULE—MANDAMUS.—A graduate from a state normal school is entitled, under section 1403 of the Political Code, as amended in 1893, to a grammar grade school certificate from any city, city and county, or county board of education in the state; and a rule adopted by a county board of education, requiring one year's experience in teaching, before such certificate will be issued, is invalid, as being inconsistent with the act of the legislature; and *mandamus* will lie to compel the issuance of such certificate.

ID.—CONSTRUCTION OF CONSTITUTION — "CONTROL" OF BOARD OF EDUCA-TION — LEGISLATIVE POWER — RULES OF BOARD.—Section 7 of article IX of the state constitution, conferring upon the county superintendents and the county boards of education "control of the examination of teachers, and the granting of teacher's certificates within their re-spective jurisdictions," is not to be construed as conferring unlimited or exclusive control, or power to legislate upon that subject, nor as tak-ing away the power of the legislature to prescribe the rules by which the qualifications of teachers shall be determined, and to determine what shall entitle them to a certificate; and the board of education has power only under section 1771 of the Political Code, to make such rules as are not inconsistent with the laws of the state.

ID.—PARLIAMENTARY POWER OF LEGISLATURE — LIMITATIONS — IMPLICA-TION.—A state legislature has the same unlimited power of legislation

which resides in the British parliament, except where restrained and limited either by express words of the constitution, or by necessary implication therefrom; and its power cannot be restrained by any unnecessary implication.

APPEAL from a judgment of the Superior Court of San Diego County.  W. L. PIERCE, Judge.

The facts are stated in the opinion.

*T. R. Palmer,* and *Gibson & Titus,* for Appellant.

*A. H. Sweet, District Attorney,* for Respondent.

HAYNES, C.—The plaintiff, who is the holder of a diploma of graduation from a normal school of this state, applied to the board of education of San Diego county for a teacher's certificate of the grammar grade, and her application was refused by the board. She thereupon filed her petition in the superior court praying for a writ of mandate requiring said board to issue to her a certificate of the grammar grade as a teacher in said county. A general demurrer to her petition was sustained by the court without leave to amend, and judgment was thereupon entered dismissing her petition. This appeal is from said judgment.

The refusal of the board to grant the certificate was based upon one of the rules of said board, which reads as follows: "Rule 4. No certificate higher than primary grade will be issued to any applicant who has not had two years' experience in teaching in the public schools; provided, that holders of state normal school diplomas, or Leland Stanford, Jr., diplomas, shall be required to have but one year's experience."

Appellant bases her right to said certificate upon section 1503 of the Political Code as amended in 1893 (Stats. 1893, p. 267), the first and second subdivisions of which are as follows: "1. The board of trustees of each state normal school, upon the recommendation of the faculty, may issue to those pupils who worthily complete the full course of training and study prescribed a

diploma of graduation; 2. Said diploma shall entitle the holder thereof to a grammar grade certificate from any city, city and county, or county board of education in the state."

Respondents base their right to adopt rule 4 above quoted, and to refuse the certificate applied for, upon section 7, of article IX, of the constitution of this state. This section, after providing that the governor, superintendent of public instruction, and the principals of the state normal schools shall constitute the state board of education, and after prescribing their duties in relation to compiling and adopting text books, and after further providing that they shall, in addition thereto, perform such other duties as may be prescribed by law, proceeds as follows: " The legislature shall provide for a board of education in each county in the state. The county superintendents and the county board of education shall have control of the examination of teachers and the granting of teachers' certificates within their respective jurisdictions."

The question to be decided, therefore, is whether said rule 4 adopted by the board of education is paramount to the provisions of section 1503 of the Political Code above quoted; the contention of respondents being, in effect, that the said provision of the constitution vests in them a power superior to that of the legislature in prescribing the conditions upon which certificates shall be issued to teachers.

The principal controversy between counsel is as to the meaning of the word "control" as used in the clause of the constitution above quoted; respondents contending that it is synonymous with the term "to govern," "rule," or "regulate"; that the fact of governing includes every exercise of authority, and to "regulate" is the power to prescribe the rules by which it shall be governed.

In order to sustain the contention of respondents it is obvious that the word "control" must have been used in its largest sense; in other words, that the control thus

vested in the board of education is unlimited and exclusive. In adopting rule 4 the board must have exercised legislative functions, and, if such legislation enacted by the board of education can supersede an enactment by the state legislature upon the same subjects, they must have the absolute and exclusive power to legislate upon that subject.

I do not think it was intended by the framers of the constitution, nor by the people in adopting it, that the provision in question should have the construction thus put upon it by respondents. Article IX of the constitution is devoted to the subject of education. Among other provisions contained in this article, section 5 makes it compulsory upon the legislature to provide for a system of common schools; and section 6 includes normal schools among the kinds of schools which may be provided for, and, in pursuance of the power to provide for normal schools, the legislature enacted said section 1503 of the Political Code.

The "control" of the examination of teachers by the county board does not necessarily imply that the legislature may not prescribe the rules by which the qualifications of teachers shall be determined, nor what shall entitle one to a certificate. Not only was it contemplated that all applicants for the position of teachers would not be educated in the universities or normal schools, and that, therefore, many teachers would necessarily be examined by the county boards, but, as to those, it is competent for the legislature to prescribe the general rules or standard by which their qualifications to teach should be determined, and the enactment of such rules would be entirely consistent with the "control" of the county board in making such examinations and in granting certificates in conformity therewith; and such is the legislative construction of the provision of the constitution under consideration.

Section 1771 of the Political Code (Stats. 1893, p. 259) provides: " County boards of education have power: 1. To adopt rules and regulations *not inconsistent with*

*the laws of this state,* for their own government; 2. To prescribe and enforce rules for the examination of teachers; 3. To examine applicants, and to prescribe a standard of proficiency which will entitle the person examined to a certificate, and to grant certificates of three grades, valid throughout the county, except as provided in section 1775." It then provides for the number of years for which certificates shall be granted for high school, grammar grade, and primary departments. Section 1775 provides: "That the county board may, without examination, grant county certificates of either the grammar or primary grade to the holders of life diplomas of other states, and of the San Francisco normal class diplomas—when recommended by the superintendent of public schools of said city—university diplomas and state normal school diplomas of other states."

It will hardly be contended that the county boards have power to grant certificates to teachers for a longer term or a different term than that authorized by these provisions of the code; yet it must follow that, if the control of the county board is absolute, unrestricted, and unlimited, they can control the term of the certificate, and grant life certificates, or certificates for any term of years, whenever they see proper.

In view of the entire provisions of the constitution upon the subject of "education," we think it could not have been intended that the legislature should be excluded, prevented, or prohibited from prescribing to whom and upon what conditions certificates shall be granted. We have already said that the enactment of rule 4 is a legislative act. It specifies the conditions upon which certificates shall be granted. It is as much the exercise of legislative power as is the code provision that those having diplomas from state normal schools shall be entitled to a certificate upon presentation of their diplomas; yet the constitution provides that the legislative power of this state shall be vested in the legislature. No other body can have or exercise legis-

lative powers unless that power be given by the consti-
tution, or delegated by the legislature, and this power
the legislature has delegated to the county board, in a
restricted form, by the provision that their rules and
regulations shall not be inconsistent with the laws of
this state.

"It has never been questioned, so far as I know," says
Redfield, C. J., "that the American legislatures have
the same unlimited power in regard to legislation which
resides in the British parliament, except where they
are restrained by written constitutions. That must be
conceded, I think, to be a fundamental principle in the
political organization of the American states. We can-
not well comprehend how, upon principle, it should be
otherwise. The people must, of course, possess all legis-
lative power originally. They have committed this, in
the most general and unlimited manner, to the several
state legislatures, saving only such restrictions as are
imposed by the constitution of the United States, or of
the particular state in question." (*Thorpe* v. *Rutland
etc. R. R. Co.*, 27 Vt. 142; 62 Am. Dec. 525.)

If, therefore, it be asserted, as it is here, in effect,
that the power of the legislature to enact section 1503 of
the Political Code does not exist, the restriction or lim-
itation of that power must not only be found in the
constitution, but the prohibition of its exercise must be
clear. It must appear either from express words or by
necessary implication. It is not asserted that there is
any express prohibition, nor does the use of the word
"control" necessarily imply that the power of legislation
upon the subject in question is prohibited to the legis-
lature. Apparently inconsistent provisions must be
harmonized, and each given some effect, if that be pos-
sible. To give the word "control" the effect given it by
the court below, some qualifying word, such as "exclu-
sive," "absolute," or "unlimited," must be implied, since
without implication that word does not necessarily im-
ply that the legislature has no power to declare that

holders of the specified diplomas should be entitled to certificates of the grammar grade.

Counsel for respondent quotes from the debates of the constitutional convention, volume 3, page 1400, the discussion upon a proposed amendment to section 8 of article IX, which section relates to "local boards of education," the last clause of which was as follows: "They shall also have control of the examination of teachers and the granting of teacher's certificates within their several jurisdictions."

It was proposed to amend said section by adding the words, "subject to general legislative enactments."

This amendment was opposed upon the ground that section 7 of said article which provided for a state board of education had been defeated. Mr. Laine said: "It seems to me that it will open the door to bring back the old system. We have got rid of this board of education (meaning the state board), but that thrusts us back to the old system whenever the legislature desires to have it so"; and Mr. Larkin contended that it "would destroy all we have done in relation to placing the schools under local control. It will again reinstate the old law. . . . . We have placed it under the local control of the counties, and that amendment will destroy all that we have done." The amendment was defeated.

It is apparent that the contest was between a state system and a local system of common schools. The convention had just defeated the provision for a state system by defeating the section providing for a state board; but counsel has overlooked the fact that section 7, as it now stands, is a new section which was ratified by the people in 1884, and which provides for a state board of education, and establishes the state system which was defeated in the convention of 1879. Said proposed amendment was defeated upon the sole ground that it would place it in the power of the legislature to re-establish the state system, which the convention had rejected by rejecting the provisions which

have since been incorporated in the constitution by an amendment.

It is true the language in the concluding part of the section adopted by the convention is the same as the concluding part of the section as it now stands; but the system of schools adopted by the convention was swept away by the amendment and a different system adopted, and this should have great weight in the construction of the clause immediately under consideration; and so the whole constitution should be examined with a view to arriving at the true intention of each part. (Cooley's Constitutional Limitations, 4th ed., 70.)

The defendants refused to grant a certificate to the petitioner solely because of the requirements of rule 4 adopted by them, and as the adoption of that rule was the exercise of legislative power which is nowhere given to them by the constitution, and is in excess of the power granted them by section 1771 of the Political Code, as amended by the act of 1893 (Stats. 1893, p. 259), the judgment should be reversed, with directions to the court below to overrule the demurrer and to issue a peremptory writ of mandate as prayed for by the petitioner.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the court below to overrule the demurrer and to issue a peremptory writ of mandate as prayed for by the petitioner.

GAROUTTE, J., VAN FLEET, J., HARRISON, J.