HUTTON *v.* GILL

[No. 15,352.   Filed May 3, 1937.]

2

*Walter C. Williams* and *Theron Miller*, both of Michigan City; and *Walter R. Arnold*, of South Bend, for appellants.

*Darrow, Rowley & Shields*, of LaPorte, for appellee.

LAYMON, J.—Appellee, at the time of the commencement of this action in the lower court, was a school teacher duly licensed to teach in the public schools in the State of Indiana, a license to teach school in Indiana for life having been issued to her by the Superintendent of Public Instruction of said state. Appellee, at said time, was a married teacher, with a success grade of 97.5, employed in the public schools of Michigan City where she had taught continuously for more than ten years. She was a permanent teacher with an indefinite contract to teach in said school system within the meaning of the Teachers' Tenure Law. (P. 259, Acts 1927, as amended by the Acts of 1933, p. 716; § 28-4307, Burns' 1933). Up until May 1, 1933, the mat-

ter of determining the salary of appellee and other teachers with indefinite contracts had been left largely to the discretion of the superintendent of schools and the board of education of said city, who, for several years, had fixed the salaries of tenure teachers according to a salary schedule which gave consideration to the license, the years of training, success grade, years of service, and other qualifications incident thereto. Appellee taught school during the school year 1932-1933 under a written contract entered into by the school city of Michigan City and appellee on April 29, 1932, which contract fixed her annual salary for the school year at $1,744.20 under the salary schedule then in effect. Previous to May 1, 1933, the board of education of said school city had made no discrimination with reference to teachers who were married women in awarding the contracts. On or about March 28, 1933, the board of education caused a notice to be delivered to appellee, which announced in effect, that on April 28, 1933, the board of education would consider the cancellation of appellee's indefinite contract because of economic conditions preventing the continuation of the payment of the salary provided in the existing contract. This notice was accompanied by a statement that changes were to be made in the salary schedule, and similar notices were sent to all tenure teachers employed by such school corporation. A meeting of the board was held on April 27, 1933, which was attended by appellee along with other tenure teachers employed in said school system. At this meeting there was a general discussion concerning the economic condition of the schools and a new salary schedule to be adopted reducing the salaries of the several teachers. Nothing was said at this meeting as to any discrimination between married and unmarried teachers. One of the members of the board

suggested that as all of the matters had been discussed at this meeting (April 27, 1933) it would be unnecessary for the teachers to attend the meeting to be held April 28th, and appellee did not attend the meeting held on April 28th. On said date the board of education met, pursuant to the notice, and resolved that the matter of canceling all indefinite contracts be deferred until May 1, 1933. On May 1st the board again met, and a teachers' salary schedule was adopted for the fixing of the compensation of all permanent teachers of the school city for the year 1933-1934. So far as material here, this salary schedule provided:

"III. Junior and Senior High School Teachers, with Degrees. Minimum, $1,050.00 per year. Annual increase, $60 per year for each year's service Michigan City Public Schools. Maximum, $1,650.00 per year. . . .

"Married Women Teachers.

"4. Salaries of married women teachers shall be the minimum salaries provided under this schedule and application to such teachers, no increase for years of service to be paid such teachers. . . .

"11. The salary of any individual teacher may be determined by the board at its discretion regardless of this schedule."

Contracts were prepared on that date for all of the teachers, including appellee, and appellee's contract was presented to her in the afternoon of the same day. The amount of salary inserted in appellee's contract for a nine months term was $1,050. Appellee, believing that all of the contracts were the same, signed the contract presented to her. Thereafter, learning of the salary schedule adopted by the board of education on May 1, 1933, she communicated with the board, demanding that she be paid in accordance with her previous contract. Her demand was declined by the board of education. Appellee then instituted this action to cancel the contract

of May 1, 1933, and to restore the effect of the contract of April 29, 1932.

The complaint consisted of two paragraphs. It is necessary for us to consider only the second, due to the finding of the court against appellee on the first paragraph. The second paragraph proceeded upon the theory of fraud by misrepresentation and concealment of material facts within the exclusive knowledge of appellants, which facts it was the duty of appellants to disclose. A demurrer was addressed to this paragraph of complaint, overruled, and answers filed by appellants. The cause was submitted to the court without the intervention of a jury, and a trial was had, resulting in a finding and judgment in favor of appellee canceling the contract executed on the 1st day of May, 1933, restoring the rights of appellee to the contract entered into on the 29th day of April, 1932, and awarding appellee the sum of $661.40, being the unpaid portion of her salary as teacher for the school year of 1933-34. Appellants filed their motion for a new trial, which motion was overruled, and this appeal was then perfected.

In view of the interpretation and construction of the Teachers' Tenure Law, *supra,* by the Supreme Court in the case of *McQuaid* v. *State ex rel. Sigler* (1937), 211 Ind. 595, 6 N. E. (2d) 547, and the questions here presented, we are unable to decide the cause before us correctly. It is apparent that fraud could not exist if the board of education had the legal right to do as they did in adopting the salary schedule of May 1, 1933.

" 'Fraud cannot be predicated upon acts which the party charged has a right by law to do, nor upon the non-performance of acts which by law he is not bound to do, whatever may be his motive, design or purpose, either in doing or not doing the

acts complained of.' *Franklin Insurance Co.* v. *Humphrey et al.* (1879), 65 Ind. 549." *Sachs* v. *Blewett* (1933), 206 Ind. 151, 188 N. E. 674.

It would be necessary, therefore, for this court to decide whether the salary schedule adopted by the board of education on the 1st day of May, 1933, was void and unreasonable under the law applicable to permanent teachers with indefinite contracts and was, therefore, unenforceable as against appellee. If the doctrine announced in the case of *McQuaid* v. *State ex rel. Sigler, supra,* is applied to this case, the judgment here should be reversed. We believe that marriage does not make a teacher less competent; neither is it contrary to public policy. If a teacher is as competent and efficient after marriage, a discrimination in fixing the salary because of marriage would be capricious. Further, marriage bears no reasonable relation to her fitness or capacity to hold the position of teacher in the public schools and to discharge the duties thereof and is not a just cause for discrimination in the fixing of salaries. We believe that the better reason and authority is sustained in the cases of *School City of Elwood* v. *State ex rel. Griffin* (1932), 203 Ind. 626, 180 N. E. 471, 473, and *Kostanzer* v. *State ex rel. Ramsey* (1933), 205 Ind. 536, 187 N. E. 337.

Under the provisions of the first clause of section ten of the Acts of 1901 (Acts 1901, p. 565, § 4-215, Burns' 1933) this case is transferred to the Supreme Court with the recommendation that the case of *McQuaid* v. *State ex rel. Sigler, supra,* be overruled.

NOTE.—Reported in 7 N. E. (2d) 1011