HUTTON ET AL. *v*. GILL.

[No. 26,863. Filed June 8, 1937.]

*Walter C. Williams, Theron Miller, Walter R. Arnold,* for appellants.

*Darrow, Rowley & Shields, C. T. Sweeney, W. J. Rommes,* for appellee.

*Paul R. Shafer, Thomas F. O'Mara,* and *Denver Harlan,* amici curaie.

ROLL, J.—The record in this case discloses that: On May 1, 1933, the school trustees of the School City of Michigan City adopted a new salary schedule for the teachers in said school corporation. This schedule reduced materially the compensation of the various teachers, and was occasioned by a shortage in school revenues. The schedule adopted on May 1, 1933, by said school board in part provided as follows:

> "3. Junior and Senior High School Teachers, with Degrees. Minimum, $1050.00 per year. Annual increase, $60.00 per year for each year's service in Michigan City Public Schools. Maximum, $1650.00 per year."

"Married Women Teachers.

4. Salaries of married women teachers shall be the minimum salaries provided under this schedule and applicable to such teachers, no increase for years of service to be paid such teachers."

After the schedule containing the above provisions was adopted on May 1, 1933, a contract of employment was tendered to appellee herein for her signature. The contract tendered to and signed by appellee fixed appellee's salary at $1050.00 for the ensuing school year of nine months beginning on September 11, 1933.

Appellee had taught for several years in the Michigan City Public Schools and was on May 1, 1933, a tenure teacher under the terms of the teacher tenure act of 1927 (Chapter 97, Acts 1927), and had been during all that time a married woman. Appellee signed the contract of employment on the afternoon of May 1, 1933, and afterwards, and on the same afternoon went to the office of the clerk of the school board and inquired about the new schedule, and for the first time saw the new schedule adopted that morning by said board. Appellee made no objections to the contract and began teaching thereunder on September 11, 1933. At the end of two weeks she received a check from the school board for her services. On September 28, 1933, she addressed the following communication to the board of school trustees.

"Michigan City, Indiana,
September 28th, 1933.

The Board of School Trustees,
School City of Michigan City, Indiana.
Gentlemen:--

This communication is being addressed to you to serve as formal notice to you that I consider invalid the teacher's contract given to me by you last spring and I therefore make demand upon you for salary to be paid me in accordance with my

teacher's contract which was in force for the school
year 1932-1933.

Up to the present time I have not endorsed nor
cashed my salary check which was delivered to me
last Friday, September 22nd. However, I am in
dire need of money and if I do cash this check, I
want to notify you that it will be done under protest
and not in ratification of the purported contract
signed last spring.

I wish you would kindly review my case and hope
that you will see fit to pay me the amount to which
I am entitled.

Sincerely yours"

No action was taken by the board upon the matter of appellee's compensation. This action was instituted by appellee on November 24, 1933, for the purpose of collecting additional compensation for her services for the school year 1933-1934, on the theory that §4 of the above schedule relative to married women teachers is invalid and void, and therefore she was entitled to the compensation as fixed by her contract for the year 1932-1933 which was $1744.20, for nine and one-half months term.

The decisive question presented by this appeal is whether §4 of the above schedule is valid. If such provision is valid, then appellee should not recover in this action, as the record shows she was paid the full amount of $1050.00 by appellants and the contract has been fully carried out. On the other hand, if, as appellee contends, such provision in the schedule is void, she is entitled to a judgment in accordance with the valid provisions of such schedule.

Section one of Chapter 97 (Acts 1927, p. 259), in part, provides:

"That teacher's contracts may contain provisions
for the fixing of the amount of annual compensation
from year to year by a salary schedule adopted by
the school corporation and such schedule shall be
deemed to be a part of such contract: and, Provided, further, That such schedule may be changed

"by such school corporation on or before May 1st, of any year, such changes to become effective at the beginning of the following school year: Provided, That all teachers affected by such changes shall be furnished with printed copies of such changed schedule within thirty days after its adoption."

Under the express provisions of the above quoted section of the statute, the board of school trustees may adopt a new schedule of salaries, and the compensation of tenure teachers may be changed by the adoption of a new schedule of salaries. It is also true by the express language of the above statute that the new schedule, when regularly adopted, becomes a part of each teacher's contract. The solution of the question here presented lies in the proper interpretation of the word "schedule." Webster defines the word schedule, as "a leaf of paper, a tablet, a writing, a document, a written or printed formal list, a list, a catalogue." Perhaps the schedule mentioned in the statute might be said to be the formal listing of the various salaries, or the paper or tablet upon which they are written or printed. But evidently the Legislature had in mind more than the tablet or catalogue or list of the amount of the compensation of the several teachers. When the Legislature authorized, by statute, the school authorities to fix the amount of the annual compensation of teachers by a salary schedule, and provided that such schedule might be changed by such school corporation, they clearly had in mind a classification of its teachers; a separation into classes and attaching thereto a certain compensation. This is the interpretation placed upon the language of the statute by the various administrative boards over the state. School boards, as a matter of common knowledge, have, in adopting their several schedules, classified teachers under various heads and fixed the compensation for the several classifications. The record shows that the appellants in this case followed this method. So, if

the legislative intent, as expressed in this section of the statute, was to authorize the school board to classify its teachers, it necessarily follows that such classification must be reasonable, natural, and based upon substantial difference germane to the subject, or upon some basis having a reasonable relation to the work assigned. If the classification is arbitrary or capricious, and upon a basis having no relation to the kind or character of the work to be done, it would be void and unlawful, and in conflict with the statute. In the schedule adopted by appellants they made marriage of a female teacher the basis of a classification of compensation. The compensation of appellee was fixed by the board, partly at least upon the fact that she was married. This in our judgment was unlawful and arbitrary, and formed no rational basis for a classification. It had no reasonable relation to the work assigned to her, as the fact that appellant was a married woman did not affect her ability to impart knowledge or perform her duties in the school room. It is conceded that her marriage status had no such effect, and if not, there could be no just or reasonable basis for the school board classifying her, as far as compensation is concerned, in a different and lower class than an unmarried female teacher having like qualifications and doing like work.

We therefore hold that §4 of the above schedule is void and of no force or effect. As stated above the schedule is by the terms of the contract made a part of appellee's contract. By elimination §4 of the schedule, appellee has a valid contract which provides for a compensation of $1650.00, for the school year of 1933-1934 and this is the amount that should determine appellee's compensation. It seems that it is immaterial whether the contract of 1932-1933 be considered in effect, or the contract of 1933-1934, as far as the question of compensation is concerned. In either event the schedule adopted

on May 1, 1933, became a part of her contract. The schedule thus adopted determines appellee's compensation. The fact that the provision of the schedule with reference to married women teachers is invalid and of no force and effect, does not invalidate the whole schedule, for the reason such invalid section can be eliminated without in any way effecting the remainder. The schedule as adopted, minus the fourth section, as far as appellee is concerned makes a valid contract and places appellee in a class natural and reasonable and one having a reasonable relation to the qualification for the work to be done.

The Appellate Court transferred this case to this court with a recommendation that the case of *McQuaid* v. *State ex rel. Sigler* (1937), 211 Ind. 595, 6 N. E. (2nd) 547, be overruled. We have again studied the questions presented and decided in the above cases and are unable to see how the principles there stated are in any manner involved in the case at bar.

In the McQuaid case, the question there presented was the right of a school board to cancel a tenure teacher's contract, when the school board had adopted a rule against the employment of married female teachers, and where the parties entered into a contract containing specific reference to such rule. No such question is here presented. We conceive a wide difference in the problem presented to the school board in determining in the first instance whether it is to the best interest of the school corporation to employ married women teachers at all, and in determining the amount of compensation to be paid them when employed. As pointed out in the McQuaid case, many factors might be present in a particular community which would have probative force in determining the policy of employing married women teachers in the public schools. Evidently no such factors were present in the Michigan City school corporation,

or at least they did not impress the school board of that city, as no rule against employing married women teachers was adopted. Under such circumstances there would seem to be no valid or rational reason for holding that appellee's marital status could furnish a valid basis for classification. Our judgment in holding that the law as announced in the McQuaid case, *supra,* is in no way involved in this case is strengthened by a like opinion expressed in oral argument by counsel for both appellant and appellee herein.

It appears from the judgment herein that the trial court found for appellee upon the theory that the contract entered into by and between appellant and appellee in April, 1932, was still in force and effect and was not modified by the schedule adopted in 1933. This we think was an erroneous view. As pointed out, above, the schedule adopted on May 1, 1933, was not an invalid schedule in toto. Only §4 of the schedule was invalid. The schedule as adopted on May 1, 1933, with said §4 eliminated, clearly fixes appellee's compensation for the school year of 1933-1934 at $1650.00, and this amount should form the basis of determining the amount due appellee. The facts are such that a new trial would avail appellant nothing. Therefore the mandate will be that this case be remanded to the trial court with instructions to vacate and set aside the judgment heretofore rendered, and enter judgment for appellee in accordance with this opinion.

Treanor, J. concurring in result.