[Civ. No. 23324.   First Dist., Div. Two.   May 17, 1967.]

AMERICAN FEDERATION OF TEACHERS et al., Plaintiffs and Respondents, v. OAKLAND UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

J. F. Coakley, District Attorney, and James E. Jefferis, Deputy District Attorney, for Defendants and Appellants.

Levy, DeRoy, Geffner & Van Bourg, Victor J. Van Bourg and Stewart Weinberg for Plaintiffs and Respondents.

AGEE, J.—The judgment in this mandamus action directs the appellants to set aside the transfer of petitioner George Stokes from his teaching position at Castlemont High School to a similar position at Fremont High School and to reassign him to his former position, effective as of the commencement of the next school year, 1965-1966.

The rationale of the judgment is that the transfer was not made in compliance with the rules governing such a transfer.

These rules were adopted by appellant board of education on May 21, 1963, under the authority of Education Code section 925,[1] and are contained in Administrative Bulletin No. 47, entitled ''Transfer Policy and Procedures for Certified Personnel'' (hereafter ''Transfer Policy'').

Requests for transfer are classified therein as being either a ''teacher-initiated request'' (paragraph 4) or a ''principal-initiated request'' (paragraph 5). Paragraph 4 is obviously not applicable, since the request was not initiated by Stokes.

The provisions of paragraph 5 are as follows:

''5. Principal-initiated request for transfer of a teacher:

''a. Principals may request transfer of teachers when they consider it in the best interest of the school. (Sec. 2416)

''b. The principal shall consult with the coordinator prior to recommending the transfer of a teacher. The decision will be based upon the best interest of the school and careful consideration will be given to the factors listed under No. 2 above. When transfers are necessitated by consolidation (enrollment drop or curriculum change), they shall be made in accordance with the criteria for maintaining a balanced staff.

''c. If a transfer seems advisable the following steps shall be taken:

'' (1) The principal shall arrange a conference and discuss with the teacher the reasons a transfer is being considered.

'' (2) If at the conclusion of the conference a transfer appears advisable, the principal shall submit a written request to the coordinator listing his reasons. A copy will be given to the teacher. Every effort will be made to submit such written request by the first Friday in May.

'' (3) The coordinator shall arrange an interview with the

---

[1]This section provides: ''The governing board of each school district shall prescribe and enforce rules not inconsistent with law or with the rules prescribed by the State Board of Education, for its own government.''

teacher to discuss all known vacancies and to consider possible assignments.

"(4) The coordinator shall notify the teacher in writing of the new assignment by the first Friday in June, if possible.

"(5) The teacher may appeal the decision to the appropriate assistant superintendent. If the problem is not then resolved to the teacher's satisfaction, the decision may be appealed to the superintendent. Upon request the teacher may have a representative present at the conference.

"d. Usually a teacher will not be transferred during probationary years."

Appellants admittedly failed to comply with subparagraphs c(1), c(2), and c(3) above. That is, the principal did not arrange any conference with Stokes to discuss the reasons why his transfer was being considered, nor did the principal make a written request to the coordinator listing his reasons for requesting that Stokes be transferred, nor did the coordinator arrange an interview with Stokes to discuss with him all known vacancies and to consider possible new assignments.

The judgment goes no further than to rescind the transfer. It provides that, after making the reassignment as directed therein, appellants may thereafter "make any other appropriate assignment [of Stokes] consistent" with the aforesaid rules.

In its "Memorandum of Decision," the trial court explains its reason for so limiting the judgment, as follows:

"It is evident, therefore, that in setting aside the transfer for the failure of Respondents [appellants herein] to follow the required procedural rules, the Court cannot limit the discretion of Respondents to make a new decision as to Stokes' assignment in the future, so long as it is made in accordance with both the procedural and the substantive provisions of the Board's transfer rules and regulations."

A brief statement of facts will suffice. On the Monday after the close of the 1963-1964 school year, the Castlemont principal advised Stokes by telephone that he was being transferred and that he should call the coordinator "to find out what his new assignment would be."

On June 26, 1964 appellant superintendent of schools, wrote to Stokes regarding his desire to "remain at Castlemont High School" and stated that "It appears to me that your

assignment to Fremont High School is consistent with the best interests of the school district. . . .''

On the same date the Castlemont principal also wrote to Stokes, stating that the reason for his transfer was ''the consolidation of your teaching position at Castlemont High School'' and that ''it was my considered judgment that the consolidation of your teaching position was a logical consolidation.''

However, the principal also went into some detail about what he termed, ''matters of concern and disagreement [with Stokes] that have occurred during the past,'' concluding as follows: ''It would be my sincere hope that you review these concerns that have caused disagreement and unpleasantness in the past at Castlemont, considering them as constructive suggestions to be of assistance to you in your new assignment.''

Regardless of the principal's real reason for selecting Stokes as the teacher to be transferred, it is clear that his transfer had become an accomplished fact by June 26, 1964 without regard for the rules governing such a transfer.

The trial court refused to disturb what it termed the ''implied finding'' of appellant board of education[2] that the transfer of Stokes was not an act of discipline and stated in its ''Memorandum'' that it could not ''properly substitute its judgment for that of school administrators as to what serves the best interests of the school;''

In short, the trial court accepted the administrative determination that the transfer of a Castlemont teacher to another high school was necessitated by a drop in student enrollment and a consolidation of teaching assignments.

The trial here was in no sense a trial *de novo*. Although testimony was taken, the judgment is based entirely upon the same evidence as that upon which appellants acted in transferring Stokes. When appellants complain of the trial court's ''prejudicial error in the admission of evidence,'' they simply overlook the *narrowness* of the court's decision.

The judgment determines *only two issues*: one, that the provisions of paragraph 5 of the Transfer Policy apply to the instant transfer; two, that appellants' failure to comply with these provisions vitiates such transfer.

---

[2]This ''finding'' is contained in a letter of September 18, 1964 from the president of the board to Stokes' attorney, stating that ''the concensus of the Board's judgment is that the facts do support the transfer as being necessitated by the consolidation of teaching assignments in the Social Studies Department at Castlemont High School.''

*Applicability of Paragraph 5*

Appellants argue that paragraph 5 does not apply to a transfer necessitated by an enrollment drop or curriculum change ("consolidation transfer") because it is not a transfer *initiated* by the principal. We do not agree.

This interpretation ignores the word "request." All transfers are initiated by a *request* for transfer. When it is the teacher who desires a transfer, the request is made by him under paragraph 4. As we have seen, this paragraph applies to a "teacher-initiated *request* for transfer." (Italics ours.)

When it is the principal or the school district who desires a transfer, the request is made by the principal under paragraph 5, which applies to a "principal-initiated *request* for transfer of a teacher." (Italics ours.)

Although appellants correctly point out that the advisability of a consolidation is a decision made by the principal's superiors, it is still clear that, once he is *directed* to consolidate, the principal is the one who determines which of his teachers will be affected thereby.

Subparagraph b of paragraph 5 makes *specific reference* to transfers "necessitated by consolidation" and lays down a special guideline for the principal to follow in effecting such a transfer.

For convenience, we repeat the entire subparagraph.

"b. The principal shall consult with the coordinator prior to recommending the transfer of a teacher. The decision will be based upon the best interest of the school and careful consideration will be given to the factors listed under No. 2 above. When transfers are necessitated by consolidation (enrollment drop or curriculum change), they shall be made [by the principal] *in accordance with the criteria for maintaining a balanced staff*." (Italics ours.)

The "criteria" referred to is set forth in paragraph 3 of the Transfer Policy, as follows: "The staff on each school should be balanced in terms of such factors as age, sex, depth and breadth of preparation, experience, and competency in special areas. [In considering a request for transfer,][3] *Every effort shall be made to meet the personal preferences and*

[3]This addition by us to the express wording of paragraph 3 is supported by the provision in the "Transfer Policy" which immediately precedes paragraphs numbered 1 to 5; this provision reads as follows: "Each request [for transfer] shall be considered in the terms of the following policies and procedures:"

*wishes of individual teachers consistent with insuring a balanced staff."* (Italics ours.)

The procedure prescribed for making "every effort" to ascertain the "preferences and wishes" of the teacher selected by the principal for transfer is prescribed in subparagraph c of paragraph 5, the opening words of which are: "If a transfer *seems* advisable the following steps *shall* be taken." (Italics ours.)

Thus, the administrative determination that a "consolidation transfer" is advisable is separate and distinct from the "steps" to be taken *thereafter* in order to effectuate such transfer.

It appears clear from the provisions discussed above that, *before* a particular teacher is transferred upon *any* ground, he is entitled to have the benefit of these "steps," as provided by said subparagraph 5c.

As the trial court pointed out: "The procedural safeguards are primarily for the benefit of the teacher, and there is no reason to consider them less important to the teacher being transferred in a consolidation situation than in a transfer for other reasons."

Stokes did not at any time waive his right to such benefit. As the letter of the superintendent states, Stokes requested that he *not* be transferred.

Certainly, the failure here of appellants to comply with subparagraph 5c was likewise a failure to comply with the requirement of paragraph 3 that "Every effort shall be made to meet the personal preferences and wishes of individual teachers consistent with insuring a balanced staff."

*Effect of Appellants' Noncompliance With Transfer Rules*

Appellants contend that Stokes was not prejudiced by appellants' failure to comply with the provisions of the Transfer Policy because he "could have obtained no greater rights or in any way bettered his position by having the benefit of conferences with the various officials named in paragraph 5, . . . since the matter was fully considered by a higher authority, namely, the Board of Education."

The statement that the board "fully considered" the matter has no support in the record. The board took no part in the selection of the teacher to be transferred and it did not "fully," or *at all* consider or determine whether Stokes was the proper teacher to transfer. As a matter of fact, under its

own rules, the board retained no active part in the transfer of teachers.

The board limited its participation in the instant matter to a consideration of the charge made by Stokes' attorney that the transfer represented disciplinary action rather than a consolidation of teaching assignments. Its "finding" with respect to this charge was made on September 18, 1964 (see footnote 2, *supra*), *after* the transfer of Stokes had been accomplished by unilateral action of the principal and the 1964-1965 school year had commenced.

We turn now to the purpose of the rules governing the transfer of a teacher who does not desire to be transferred. In general, paragraph 5 provides for *pre*-transfer discussions among the teacher, the principal, and the coordinator with respect to the reasons for the proposed transfer and the availability of other teaching assignments in the event such transfer is made. Any discussions after a transfer has been made can hardly be classified as the type of discussion contemplated by the rules.

Rules and regulations adopted by a board of education are, in effect, a part of a teacher's employment contract and the teacher is entitled to their enforcement. (*Heckley* v. *Board of Education,* 53 Cal.2d 218, 220-221 [1 Cal.Rptr. 4, 347 P.2d 4]; *Rible* v. *Hughes,* 24 Cal.2d 437, 443 [150 P.2d 455, 154 A.L.R. 137]; *Fry* v. *Board of Education,* 17 Cal.2d 753, 760 [112 P.2d 229].)

As stated by the trial court: "Among the purposes of a Board of Education in adopting rules governing transfer of personnel is the obvious one of improving morale (and, consequently, the performance of teachers) by establishing fair procedures and criteria which minimize the risk of arbitrary or prejudiced decisions or decisions based on incomplete or inaccurate facts or misunderstandings."

Stokes was a ten-year certificated and permanent teacher of appellant school district, the last five years being spent at Castlemont. He was at no time given the opportunity to participate in the discussions provided for by paragraph 5.

We think that the risk of prejudice to Stokes, resulting from appellants' noncompliance with the transfer rules, is so great that the trial court was justified in setting aside the transfer.

98

In view of the limited effect of the judgment, it becomes unnecessary to discuss any of the other issues raised on appeal.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.