BOARD OF SCHOOL TRUSTEES, SCHOOL CITY OF PERU ET AL.
*v.* MOORE.

[No. 27,467.   Filed April 9, 1941.]

C. Y. *Andrews,* A. W. *Matt,* and L. O. *Arnold,* all of Peru, for appellants.

*Russell J. Wildman, O. F. Rhodes,* and *Gration P. Wickerham,* all of Peru, for appellee.

FANSLER, J.—The appellee began this action seeking to enjoin the appellant from using, enforcing, or applying a portion of a salary schedule, known as "Classification E," as a basis for fixing salaries of school teachers. It was stipulated by the parties "that the only question involved is the validity of 'Classification E' as set out in the amended complaint, it being the only question presented by the amended complaint and the demurrer thereto." The court overruled a demurrer, which means that the classification was held to be invalid. The defendant refused to plead further, and there was judgment enjoining the use of the classification as prayed.

The ruling on the demurrer is the only error assigned. § 28-4307, Burns' 1933, § 6003, Baldwin's 1934, pro-

vides: "That teachers' contracts may contain provisions for the fixing of the amount of annual compensation from year to year by a salary schedule adopted by the school corporation and such schedule shall be deemed to be a part of such contract; Provided further, That such schedule may be changed by such school corporation on or before May first of any year, such changes to become effective at the beginning of the following school year; Provided, That all teachers affected by such changes shall be furnished with printed copies of such changed schedule within thirty [30] days after its adoption; And, provided further, That teachers' contracts shall be uniform and of the form and wording as prescribed by the state superintendent of public instruction." There is no contention that the teachers' contracts did not contain provision for fixing the amount of annual compensation by a salary schedule, nor that the schedule was not adopted before the first of May of any year, nor that the teachers were not furnished with printed copies of the schedule within thirty days after adoption.

The sole contention is that the classification is arbitrary, capricious, unreasonable, and not germane to the subject-matter; that "Classification E is not a classification, in that it is not based upon differences which are apparent and reasonable, does not have regard to real resemblances and real differences between things and persons, does not class them in accordance with their pertinence to the purpose in hand, and instead of defining a definite yardstick for the determination of the qualifications entitling one to escape Classification E, makes the School Board, and their judgment, the sole basis of placing a teacher in or out of said classification." "Classification E" is one of five classes by which

the salaries of all teachers employed by the School City of Peru are regulated. The entire schedule is as follows:

"CLASS A.—Includes all teachers who have completed a two-year standard normal course or its equivalent, over and above a standard four-year high school course.

"CLASS B.—Includes all teachers who have completed a three-year standard normal or college course or its equivalent, over and above a standard four-year high school course.

"CLASS C.—Includes all teachers with a bachelor's degree representing four years of standard college work, or its equivalent, over and above a standard four-year high school course.

"CLASS D.—Includes all teachers with a master's degree representing five years of standard college work or its equivalent, over and above a standard four-year high school course.

"CLASS E.—Includes teachers who are deficient in one or more of the following:

(1) Teachers who are considered inefficient.

(2) Teachers who lack sufficient control over the technique of teaching.

(3) Teachers who lack sufficient classroom discipline.

(4) Teachers who lack initiative.

(5) Teachers who fail to put forth a sufficient amount of effort to secure justifiable results.

(6) Teachers who have a non-professional attitude.

(7) Teachers who fail to carry out the recommendations, suggestions, or requests from the principals, supervisors, superintendent or the Board of School Trustees.

(8) Teachers who neglect further training in an accepted and recognized summer school.

(9) Teachers who are under-qualified.

(10) Any other justifiable cause.

"Final decision as to teacher placement in Class E shall rest with the Board of School Trustees."

The statute furnishes no method of classification, and determination of the basis for classification and of salary differences is left to the discretion of the school board. Teachers are generally classified upon the basis of their teaching position, those teaching in the higher grades receiving larger salaries, with additional allowances for years of service and additional scholastic attainments. But the statute does not require that such a method shall be followed. Any method that is ". . . reasonable, natural, and based upon substantial difference germane to the subject, or upon some basis having a reasonable relation to the work assigned," is permissible. *Hutton et al.* v. *Gill* (1937), 212 Ind. 164, 169, 8 N. E. (2d) 818, 820. It will simplify the determination of whether the schedule conforms to these requirements to first dispose of two incidental contentions.

The appellee contends that the provision contained in the salary schedule, that: "Final decision as to teacher placement in Class E shall rest with the Board of School Trustees," invalidates the classification. But always the determination of the school authorities as to the class in which a teacher is placed is final and conclusive. In schedules which regulate salary upon the basis of the grades in which the teacher is employed, the school authorities have arbitrary power to assign a teacher to primary, or intermediate, or high school service. This authority is vested in the school officers by the Legislature, and courts may not inter-

fere and substitute their discretion for the discretion of the school board. *School City of Peru et al.* v. *State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N. E. (2d) 176, 1002. It is provided in § 28-4308, Burns' 1933, § 6004, Baldwin's 1934, which concerns the cancellation of tenure teachers' contracts for cause: "That the decision of the school board shall be final." This merely means that where the school authorities act lawfully, and exercise a discretion vested in them by the Legislature, their decision is final. Their own declaration of the finality of their decision neither adds to nor detracts from the authority vested in them. The clause as used in the schedule under consideration may have been intended to indicate that no superintendent, or principal, or inferior school authority, was vested with any power to change the classification once it had been decided upon by the school board.

The other question involves subdivision 10 of Class E, "Any other justifiable cause." The section of the statute last referred to provides that: "Cancelation of an indefinite contract of a permanent teacher may be made for incompetency, insubordination, . . . neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause, but may not be made for political or personal reasons. . . ." "Other good and just cause," as used in this statute, has been held to mean any ground which is put forward in good faith, and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system. See *McQuaid et al.* v. *State ex rel. Sigler* (1937), 211 Ind. 595, 6 N. E. (2d) 547. In determining the validity of this school-board legislation, it is not necessary to enumerate the causes that might be gathered into this omnibus

provision. It is sufficient for the purposes of the case to construe the provision as intended to be governed by the rule *ejusdem generis,* and to bring in only causes of a like kind or class with those designated in the preceding specific provisions. Under such construction, clause 10 is valid if the provisions of the preceding clauses are valid.

Where the classification for salary purposes is based upon the grade in which the teacher is employed, the school board may, without assigning reasons for its action, place a teacher in any position it deems advisable, and, consequently, in any compensation class within the statutory minimum requirement, and its action will not be reviewed or questioned in the courts. By vesting such discretion in school authorities, the Legislature has indicated its belief that the interest of the school system will be thus best served. Courts must assume that school officers, intrusted by the Legislature with the management of the schools, are impelled by the highest motives in their actions in the management and control of school affairs, and that any schedule sought to be enforced was prompted solely by a good-faith purpose to conform to the law, to respect teachers' rights, and to advance the best interests of the school corporation. If the trustees of the School City of Peru had adopted a schedule based upon the grades in which a teacher is assigned to serve, it might promote or demote any tenure teacher, and thus affect the salary classification of that teacher without assigning a reason for its action. But it is reasonable to suppose that in choosing teachers for promotion to higher position and more responsibility, and consequently higher salary, an intelligent and conscientious school board might consider efficiency, control over teaching technique, class-room discipline, initiative,

effort put forth, professional attitude, co-operation in carrying out recommendations of superiors, additional training acquired from time to time, high qualifications for service, or any other matter that would naturally indicate that the teacher is more valuable and useful to the school system than the ordinary teacher. Intelligent and progressive interest in the welfare of the school system requires a consideration of such matters, and that the placement and pay of teachers shall be influenced by such considerations. And, conversely, it could be reasonably expected that the less efficient, who lack control over the technique of teaching, who do not maintain the best discipline, and who lack initiative, who fail to put forth effort, who have a non-professional attitude, who fail to co-operate with their superiors, who neglect to improve themselves by further training, and who are unqualified, would, in the interest of the schools, be placed in the less responsible and less remunerative positions. In all walks of life it is expected that those who serve best will be appreciated most and will be best remunerated. There is no expression in the law which denies the school authorities the right to weigh such considerations in classifying teachers and fixing their compensation. But, on the contrary, the vesting of discretion in school officers to maintain the school system for the good of the community would seem to command a consideration of such matters. Teachers' contracts may be canceled by the school authorities for incompetency, insubordination, or neglect of duty, but the statute does not command that contracts be canceled. There are no doubt degrees of incompetency, and insubordination, and neglect of duty.

Clauses 1, 2, 3, 4, 5, 6, and 9, under Class E, are directed toward the competency of teachers. It is argued by the appellants that if teachers become lethargical in

professional attitude, manifest defects in practical service, and fail to make progressive development in their qualification for work, and to manifest a seemly interest in the welfare of the schools, the board is confronted with a perplexing problem. It is said that teachers of this type are not essentially bad; that they may be potentially good; that the board may not desire to cancel their contracts, but may feel that something should be done to stimulate a desire upon the part of these teachers to improve their professional ability and service.

The school board might have classified the teachers, for the purpose of compensation, upon the basis of the grade in which the teacher served, and, in order to stimulate efficient service, high school teachers might be reduced to primary grades for the purpose of stimulating better effort. But the school board has chosen another method, based upon the degree of technical training of the teachers, with a classification whereby the teacher may continue in the same grade of work to which he has been accustomed, but at a lower salary if it is believed that he has not put forth sufficient effort. It is not for the courts to decide which method will procure the best results. That is within the discretion of the school authorities.

Clause 7 of Class E deals with what borders on insubordination.

Clause 8 pertains to teachers who neglect further training in an accepted and recognized summer school. It is not unreasonable that the school authorities should require their employees to continue their training in order to keep abreast with the most modern and advanced methods, nor is it unreasonable that those who neglect further training should receive less compensa-

tion than those who seek to improve their efficiency and increase their value to the school corporation.

Clause 10 refers to any other justifiable cause. It must be assumed, until a specific case arises, that action under this provision will be limited to things of a like kind and class with the preceding specific provisions. It cannot be said that action based upon such ground deprives a teacher of any right protected by the statute.

We find no illegality in the schedule.

Judgment reversed, with instructions to sustain the demurrer.

NOTE.—Reported in 33 N. E. (2d) 114, 133 A. L. R. 1431.