104

(No. 35927.—

STANLEY C. RICHARDS, Appellant, *vs.* BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 201, Appellee.

*Opinion filed Dec. 1, 1960.—Rehearing denied Jan. 18, 1961.*

RUGEN, LIGTENBERG & GOEBEL, of Chicago, (JOHN LIG-
TENBERG, of counsel,) for appellant.

JAMES C. SOPER, and RICHARD F. MCPARTLIN, JR., both
of Chicago, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the
court:

This direct appeal is prosecuted by plaintiff, Stanley C.
Richards, from a declaratory judgment of the circuit court
of Cook County which found section 22—5 of the School
Code to be constitutional, (Ill. Rev. Stat. 1957, chap. 122,
par. 22—5,) and held that a salary program adopted by de-
fendant, the Board of Education of Township High School

District No. 201, did not operate to deny plaintiff due process and equal protection of law.

Plaintiff is a regular, full-time, tenure teacher, having been employed by defendant since 1947, and holds both a master's degree in mathematics and a life high-school teaching certificate issued by the State of Illinois. In May, 1951, defendant first adopted a resolution providing for a professional growth program in conjunction with the salaries to be paid its teachers. Instead of automatic increases based on years of experience alone, it was provided that teachers would be required to take five semesters of university or college work, or its equivalent by participating in accredited workshops, in each five years in order to advance to the next salary increment or to stay at the top of the salary scale. Five years later, in August, 1956, defendant revised the program, the principal change being that only a minimum of three semester hours of college credit, or its equivalent, would be required during a seven-year period.

During the school year of 1957-1958, plaintiff was employed at an annual salary of $7250. At a regular meeting of defendant in May, 1958, a salary schedule was adopted for the school year of 1958-1959 which accorded to teachers of plaintiff's experience an annual raise of $400, provided the teacher had, by September 30, 1958, met the requirements of the professional growth program as revised in August, 1956. Although plaintiff had been informed and knew of the program, and had received a copy of the 1958-1959 salary schedule, he had met none of the professional growth requirements when the new term started in September, 1958, with the result that defendant continued to pay him in installments based upon an annual salary of $7250. In November, 1958, plaintiff filed this action for a declaratory judgment that he was entitled to the annual salary of $7650, seeking thereby to test the authority of defendant to combine its salary schedule with a program for professional growth.

During June, 1959, while this suit was pending, plaintiff advised the superintendent employed by defendant of his intention to take additional college work and received approval of the courses he proposed to take. Thereafter, he earned three semester hours of college credit in the subjects of Education and Vocational Guidance which were tendered to and accepted by defendant as compliance with the professional growth program. On this basis, plaintiff is receiving a salary of $8100 for the 1959-1960 school year, being the top of the scale for teachers with a master's degree. While it would appear at first blush that plaintiff's course of conduct in later complying with and accepting the benefits of defendant's program would estop him from attacking its validity, (cf. *City of Peoria* v. *Peoria Transit Lines, Inc.* 11 Ill.2d 520; *Layton* v. *Layton,* 4 Ill.2d 241,) we do not believe that his effort to protect his future status, attended as it was by some degree of economic coercion, is to be taken as manifesting any intention to waive his claim for a salary increase during the 1958-1959 school year. Cf. *People ex rel. Carpentier* v. *Morgan Trucking Co.* 16 Ill.2d 313, 315.

Plaintiff's initial contention, *viz.,* that defendant was without statutory authority to adopt a salary schedule based upon a professional growth program, necessitates some examination of article 22 of the School Code, the article relating to the authority of school boards to employ teachers and fix their salaries. (Ill. Rev. Stat. 1957, chap. 122, art. 22.) By section 22—1 it is provided that school boards shall appoint teachers and fix the amount of their salaries, "subject to limitations set forth in this Act;" section 22—2 enumerates the holidays upon which a teacher shall not be required to teach; section 22—3 provides that no deduction in wages will be made for attendance at teachers' institutes; section 22—4 states that religious affiliation shall not be considered either a qualification or disqualification for employment, and section 22—5 provides: "School

boards may require teachers in their employ to furnish from time to time evidence of physical fitness and continued professional growth." In the remaining sections of the article, sick leave and pay regulations during leave are provided for (sec. 22—6), discrimination in salaries on the basis of sex is prohibited (sec. 22—7), and minimum salaries are fixed, *viz.*, "less than a bachelor's degree, $3200; 120 semester hours or more and a bachelor's degree, $3400; 150 semester hours or more and a master's degree, $3600." (Sec. 22—8.)

The only other limitation upon the authority of the board to fix salaries, which has been found or brought to our attention, is in the Teacher Tenure Law as follows: "Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to the provisions of this Act and the lawful regulations of the employing board. This section and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided. Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or renewals." Ill. Rev. Stat. 1957, chap. 122, par. 24—2.

Section 7—14 of the School Code (Ill. Rev. Stat. 1957, chap. 122, par. 7—14) grants to a board of education all of the powers given to school directors by article 6 of the Code. Among these powers are the passing of rules for the government of the school, and the fixing of salaries for teachers. See: Ill. Rev. Stat. 1957, chap. 122, pars. 6—20 and 6—22.

From the language the legislature has employed, it is clear that a school board has discretionary control over the salaries of its teachers, subject only to any limits expressly fixed by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory and unreasonable, or based upon an improper classification. There is no provision in the Code which denies to school boards the right to weigh the factor of professional growth in classifying teachers and fixing their compensation but, on the contrary, the general purport of all the pertinent provisions and the specific directions of a few strongly support a legislative intent to permit the discretion of the board to be exercised in such a manner. Section 22—8, relating to minimum salaries, itself classifies teachers on the basis of professional growth and stands for the proposition that teachers who have a greater amount and a higher degree of schooling are entitled to higher compensation. It is significant, too, that the provision of the Code which permits school boards to require teachers "in their employ" to furnish from time to time evidence of continued professional growth (sec. 22—5), is found in the article which likewise authorizes the board to fix salaries. If it was intended that professional growth was to be a proper basis for continuing a teacher in his employment, or for his assignment to more responsible duties, it must necessarily follow that such growth was likewise intended to be a proper element in fixing a teacher's compensation. Professional growth is not made a condition precedent to employment, and a salary schedule based upon such growth does no more than to provide that a teacher is to be compensated in accordance with his training and experience.

Moreover, it has been held in at least two sister jurisdictions that the broad discretion granted to school authorities to fix the salaries of their teachers necessarily commands, both in the best interest of the school and a proper execution of the school authorities' duties, that con-

sideration be given to professional growth in classifying teachers and fixing their salaries. (See: *Board of School Trustees* v. *Moore,* 218 Ind. 386, 33 N.E.2d 114; *Rible* v. *Hughes,* 24 Cal. 2d 437, 150 P.2d 455.) This construction is based on the reasoning that increased compensation for professional growth is a stimulus which will benefit the school and its pupils, and upon the philosophy that the very basis of the educational system is that study enlarges one's capacity for accomplishment and leadership in any activity. For these reasons and other self-evident benefits that will accrue to our schools, it is our opinion that the broad powers to fix salaries conferred by the School Code of this State should receive the same construction. It is axiomatic that where the legislature empowers a municipal corporation or administrative agency to perform certain acts, courts will not interfere with the exercise of such powers, or substitute their discretion, unless the action of the municipality or agency is palpably arbitrary, unreasonable or capricious.

It is neither arbitrary nor unreasonable to classify or compensate teachers on the basis of their ability and value to the school system. Plaintiff makes no serious contention to the contrary, but insists that a salary schedule based upon professional growth is discriminatory and based upon an unreasonable classification. He sees in the minimum wage provisions of section 22—8 and the language of section 24—2, heretofore quoted, a requirement of uniformity in salaries and urges that a salary schedule based upon professional growth, which may or may not have been completed, violates the requirement of uniformity and results in a reduction of salary for teachers who do not meet the requisites for professional growth. While we are not in accord with the interpretation plaintiff places on sections 22—8 and 24—2, it is enough to point out that uniformity is not violated by a clasification which is reasonable, natural and based on substantial differences germane to the subject. (*Ronda Realty Corp.* v. *Lawton,* 415 Ill. 313; *Charles* v.

*City of Chicago,* 413 Ill. 428.) We agree with the Indiana court in the *Moore case* that it is not unreasonable "that the school authorities should require their employees to continue their training in order to keep abreast of the most modern and advanced methods, nor is so unreasonable that those who neglect further training should receive less compensation than those who seek to improve their efficiency and increase their value to the school corporation." (33 N.E.2d at 117-118.) Nor is there merit to the claim that a salary schedule based on professional growth operates to reduce the compensation of teachers who do not choose to comply. If such a teacher neglects his professional growth he is paid the exact salary to which his years of experience and degree of training entitle him; if he does obtain additional credits to qualify for additional salary, the board is doing no more than to compensate him for his enlarged professional experience.

Plaintiff further contends that defendant's salary program is in derogation of his life teaching certificate, and that it violates his tenure or continued contractual service status. We think he is mistaken in both respects. The fact that plaintiff has a life certificate does not guarantee him employment, nor compel any particular school board to hire him, nor does it mean that he is entitled to employment at a particular salary, or entitled to pay raises, regardless of his compliance with lawful regulations concerning such pay raises. Conversely, the defendant has done nothing to impeach or attack the teaching certificate of the plaintiff, or to reflect upon his teaching ability, but has done no more than to give him an option to acquire additional salary benefits if he so elects. Clearly, the fact that plaintiff possesses the training which entitles him to a life certificate is irrelevant to the prerogative of the defendant to pay him in accordance with his value to the school system.

As to the claim that the professional growth program violates the continued contractual status of plaintiff, it is

again based on the contention that the program in some way penalizes him and works a reduction in his salary. We repeat, however, that the professional growth program neither causes a reduction in salary nor penalizes, but permits the board of education, at the option of the individual teacher, to pay compensation on the basis of training and experience. Futhermore, the permanency of tenure given by the legislature to teachers carries with it no assurance against changes in salary. (See: 47 Am. Jur., Schools, sec. 135; 113 A.L.R., 1498; 127 A.L.R., 1310.) Section 24—2 of the Illinois Teachers' Tenure Act states that the tenure status of a teacher is "subject to the provisions of this Act and the lawful regulations of the employing board," and goes on to provide: "Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing * * *." (Ill. Rev. Stat. 1957, chap. 122, par. 24—2.) This language admits to no doubt that tenure status does not prevent a reduction in salary, provided reductions are uniform, or based upon some reasonable classification. Here, defendant's schedule makes no reductions in salary but, instead, provides for a salary increase based upon a reasonable classification and is uniformly applicable to all members of the class. *Donahoo* v. *Board of Education,* 413 Ill. 422, and *Hankenson* v. *Board of Education,* 10 Ill.2d 560, which plaintiff urges upon us in support of his position, have no similarity either in their facts or the legal issues involved.

We have held on many occasions that a law vesting discretionary power in an administrative officer without properly defining the terms under which his discretion is to be exercised is void as an unlawful delegation of legisla-

tive power. (*Krebs* v. *Thompson*, 387 Ill. 471; *Department of Finance* v. *Cohen*, 369 Ill. 510; *Chicagoland Agencies, Inc.,* v. *Palmer,* 364 Ill. 13; *People* v. *Beekman & Co.,* 347 Ill. 92.) Seeking to find application for such principle here plaintiff next contends that if section 22—5 of the Code is to be taken as authority for school boards to combine professional growth programs with salary schedules, such section is invalid because it contains no definition of the term "professional growth." This omission, it is claimed, permits school boards to interpret the section as they choose, thus permitting them to determine what the law will be. While we think it is arguable that the term "professional growth" has such a well-recognized meaning in educational circles that, standing alone, it affords a sufficient standard to guide boards of education, (cf. *People ex rel. Adamowski* v. *Chicago Land Clearance Com.* 14 Ill.2d 74, 82,) the legislature has in fact furnished a definition of professional growth, general in its terms, in section 21—15 of the Code, dealing with the requirement for registration of any teacher's certificate limited in time. See: Ill. Rev. Stat. 1957, chap. 122, par. 21—15.

Although the school law is composed any many different articles and sections, they are *in pari materia* and combine to form one complete law, all of which must be read to arrive at the legislative intent. (See: *People ex rel. Communuity High School Dist.* v. *Hupe,* 2 Ill.2d 434, 448; *People ex rel. Joseph* v. *Pennsylvania Railroad Co.* 18 Ill.2d 61, 66; *School Directors* v. *County Board of School Trustees,* 15 Ill. App. 2d 115, 122.) Here, the definition of professional growth set forth in section 21—15, being a part of the Code and general in nature, forestalled the necessity of the legislature repeating itself in section 22—5 and establishes sufficient standards to overcome any constitutional objection.

The judgment of the circuit court of Cook County was correct and is therefore affirmed. *Judgment affirmed.*