**Farwell L. SAWIN**

v.

**Inhabitants of the TOWN OF WINSLOW et al.**

Supreme Judicial Court of Maine.

May 14, 1969.

Frank G. Chapman, Augusta, for plaintiff.

Richard B. Sanborn, Augusta, for defendants.

Before WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from a decision of the Superior Court, jury waived, upon a complaint under Rule 80B M.R.C.P. which sought review of action imposing salary sanctions by the Superintending School Committee (Committee) of the defendant Town. Plaintiff is a school teacher (Teacher) in the public school system (System) of the Town of Winslow (Town) in tenure status,[1] by virtue of which he was extended a "teacher's continuing contract" effective May 2, 1966 for a two year period beginning September 1, 1966 and ending August 31, 1968 with a salary "fixed at $5,700.00 per annum for the school years 66–67 and 67–68 in accordance with the salary schedule," and with additional provisions that upon Teacher's completing certain academic credit hours before September 1, 1966, the base salary would become $5,900.00 with $200.00 additional for Supervision of the Science Club. When Teacher joined the System, the Committee issued a "portfolio" to him which, among other things, informed him of a regulation providing that a teacher might be denied a salary increase, over his contractual salary, if his teaching performance were deemed not to be satisfactory, such denial of increase affecting one school year.

The salary schedule in effect in the Town for the period 1965–1966, provided, consistently with the state minimum salary statute, 20 M.R.S.A. § 1901, that annual salary increases (increments) would not exceed $300.00 until a given teacher reached the position on the schedule applying to his training and experience. The schedule also provided that "on vote of the Superintending School Committee, a teacher's increment may be suspended for one year for failure to meet satisfactory standards of performance, provided that teacher has been informed of the reasons for it." The Town salary schedules for the two years here involved, exceeded the minimum salaries fixed by state law for the same period and the state minimum salary requirement is not an element in the case.

The Committee established a salary schedule on March 10, 1967 effective September 1, 1967, for the school year 1967–1968, which Teacher claims entitled him to a base salary of $7,500.00. This schedule included the same provisions as in the 1965–1966 schedule, that "a teacher's increment or adjustment to his new salary schedule" might be suspended for unsatisfactory performance "providing the teacher has been informed of the reasons for it."

At a meeting of the Committee on March 27, 1967 it was voted to fix Teacher's base

---

1. 20 M.R.S.A. § *161. Powers and duties of superintendents*
   "A superintendent of schools shall have the following powers and duties:
   "*5.* * * * He shall nominate all teachers, subject to such regulations governing salaries and the qualifications of teachers as the superintending school committee * * * shall make, * * *. Except that after a probationary period of not to exceed 3 years, subsequent contracts of duly certified teachers shall be for not less than 2 years, and unless a duly certified teacher receives written notice to the contrary at least 6 months before the terminal date of the contract, the contract shall be extended automatically for one year and similarly in subsequent years, * * *."

salary at $6,440.00 with an additional $200.-00 for Supervision of the Science Club.

By letter dated April 12, 1967 the Superintendent of Schools (Superintendent) informed Teacher of the salary voted him for the 1967–1968 school year and the letter closed with the sentence: "I will be happy to go over this in detail with you Friday, April 14, after 4 p. m. or Saturday April 15 after 8 a. m."

With this letter, or at about the same time, Teacher was sent the "annual salary agreement," for the 1967–1968 school year reciting the $6,400.00 plus $200.00 for special duties, calling for Teacher's acceptance by signature on or before May 12, 1967. The proffered salary not being in the amount to which Teacher claimed entitlement, he conferred with the Superintendent after April 12, 1967 and was told the reasons for his not receiving the salary increase. On May 12, 1967 the date upon which the salary agreement was to be returned to the Superintendent, Teacher signed it with the following notation: "I am signing this statement with the understanding that an adjustment may be made in line with the adopted salary schedule 1967–1968 as the result of any action that may be taken in the future."

Following Teacher's conference with the Superintendent, above referred to, the Committee met on May 10, but made no change in the proffered salary, and refused "to accept the statement" wihch was written on the bottom of the salary agreement. Teacher was notified of this Committee action by a letter dated May 25, 1967 from the Superintendent, which letter closed with the sentence: "If you have further questions pertaining to this please feel free to contact me to talk it over." It does not appear that Teacher furthered the discussion and Teacher at no time asked for a hearing before the Committee.

By complaint dated September 20, 1967 in which Town, Committee and Superintendent were made defendants, Teacher sought review of the Committee's action and asked that he be placed at the salary level commensurate with his teaching experience and that the difference between the salary voted and paid him and that listed on the schedule be awarded him. The Superior Court granted the relief which was requested.

Defendants appealed upon the following twelve points:

"1. The Court erred in permitting a review to be taken more than thirty days after the action which was complained of and in violation of Rule 80B(b).

"2. The Court erred in ruling that the final action of the Superintending School Committee which was appealed to Superior Court occurred on September 1, 1967.

"3. The Court erred in permitting the Plaintiff-Appellee to appeal to the Superior Court without exhausting his remedies before the Superintending School Committee.

"4. The Court erred in taking jurisdiction where it is clear that the Complaint was not served upon the members of the Superintending School Committee or Superintendent.

"5. The Court erred in ruling that a Superintending School Committee cannot withhold a future salary increase over and above the amount of the salary set in the contract in the event of unsatisfactory performance by a teacher.

"6. The Court erred in ruling that a Superintending School Committee cannot establish regulations under Title 20, Section 161(5) for withholding salary increases in such instances.

"7. The Court erred in ruling that the Winslow Superintending School Committee varied the terms of the contract between them and the Plaintiff-Appellee.

"8. The Court erred in ruling that the failure of the Superintending School Committee to give notice and to provide

for hearing prior to withholding a salary increase is violation of due process.

"9. The Court erred in finding judgment of $1060.00 for the Plaintiff-Appellee.

"10. The Court erred in requiring the Defendants to issue a new contract at a new figure.

"11. The Court erred in failing to distinguish between the privilege of receiving a future salary increase compared with the right to retain a present salary which the parties agreed to in a contract.

"12. The Court erred in setting aside a contract which the parties had agreed to and which was specifically subject to regulations of the Superintending School Committee as established under Tile (sic) 20, Section 161(5)."

### Procedural Questions

*Point 4:*

In defendants' answer to the complaint, after admitting or denying seriatim its allegations, "the defendants further say that the Complaint does not state a cause of action" and ask for dismissal.

■■ Under that clause of the answer in which defendants allege that plaintiff has not stated a cause of action, defendants urge, on appeal, that they could and did thereunder raise procedural questions now reserved by points of appeal 1 through 4. While Rule 80B(a) does not require responsive pleading, an answer was filed and the Superior Court, the finding of which is now under attack, was entitled to pass upon all issues which defendants proposed to raise. Certain it is that if defendants elected to file an answer, plaintiff and the Court may expect it to be responsive as required by the Rule. The finding of the presiding Justice indicates that points 1, 2, and 3 were raised before him, but there is nothing in the pleading to raise, or in the decree appealed from to indicate that the Superior Court had a chance to consider,

point 4. It is too late to raise it on appeal. 5 Am.Jur.2d., Appeal and Error § 545. See Smith v. Davis, 131 Me. 9, 13, 158 A. 359, 81 A.L.R. 78.

*Points 1 and 2:*

■■ While Teacher was informed by letter of April 12, 1967 that he had not been awarded the salary which the schedule listed for one with his teaching experience, the effective date of the salary schedule was September 1, 1967.

The presiding Justice ruled that the "action" for which review is granted under Rule 80B is the final action of the agency, that the final action of the Committee occurred on September 1, 1967, from which date the 30 day appeal period began, and Teacher's complaint filed September 20, 1967 was timely. The purpose of Rule 80B is to provide "a uniform and simple procedure for all review of administrative action" and the language "should be construed broadly." Maine Civil Practice § 80B.1. The Committee announcements of April 12 and May 25 might be considered declarations of intent which did not become "final" until September 1, 1967,—or even the first pay day after September 1, 1967. While a prerequisite of finality before appeal is sound administrative law, that requirement "is, however, flexible enough to permit adaptation to special situations" (see 2 Am. Jur.2d., Administrative Law § 583), and the ruling of the presiding Justice, under the circumstances, cannot be held error.

*Point 3:*

■ There was no remedy under our Administrative Code (5 M.R.S.A. § 2301). That statute lists the agencies covered by the Code and such list does not include Superintending School Committees. The absence of statutorily supplied administrative remedies renders appellant's objection to this appeal groundless. Much is to be said, however, for a teacher-committee confrontation. If the Committee were convinced that the teacher had a sincere in-

terest in professional service and correcting any alleged shortcomings, it might well accept his expressed good faith and vote him the salary which he claims. It is significant that at no time has Teacher denied that the criticism of his work was just.

*Points 5 through 12, inclusive:*

The ultimate issue, is whether the Committee is empowered to establish regulations which impose salary sanctions for substandard teaching performance, or is faced with the alternative of accepting such performance, or instituting dismissal proceedings under the statute.[2]

2. 20 M.R.S.A. § 473. * * *
"Superintendeing school committees * * * shall perform the following duties:

" * * *

"*4. Teachers dismissed.* After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain. Such dismissal shall not deprive the teacher of compensation for previous services;"

3. Article VIII, Constitution of Maine, provides that towns are to be required by the Legislature to support and maintain public schools.
R.S. 1821 Chapter 117 § 3 made it the duty of the school agent, chosen at town meeting, "to hire the school master or mistresses" whose qualifications are certified by the Superintending School Committee (Committee) and towns required to "annually raise and expend" funds therefor amounting to not less than forty cents per inhabitant.
This minimum per capita fund for school purposes was increased to sixty cents as recorded in R.S.1857; one dollar as recorded in R.S.1871; eighty cents as recorded in R.S.1883, at which figure it has remained. (See 20 M.R.S.A. § 851)
R.S.1840 Chapter 17 § 42. School agents "to hire" teachers "from the money assigned to them by the assessors of their towns."

■ It is implicit that the authority of the Superintendent and Committee covers the employment of teachers and determination of their salary, limited only by the funds annually appropriated by the respective cities and towns for school purposes,[3] —and since July 1, 1958 (Chapter 364 P.L. 1957) affected by the minimum salary schedule fixed by state law.[4]

■ It is implicit also that a Committee charged with "the management of the schools" among the ten areas of responsibility delegated by 20 M.R.S.A. § 473, one paragraph of which appears in Footnote 2, has the power to adopt reasonable regula-

R.S.1857 Chapter 11 § 53. School agent "to employ teacher * * * from the money placed at his disposal for the purpose."
R.S.1871 Chapter 11 § 87. Committee shall employ teachers and notify the school agent of "the compensation agreed to be paid."
R.S.1903 Chapter 15 § 36, III. The Superintendent of Schools "shall employ teachers" subject to the approval of the Committee, and report (§ 38) "wages" paid.
R.S.1916 Chapter 16 § 49. Same as R.S.1903 except no report required on compensation.
P.L.1917 Chapter 188 required the State Superintendent of Schools to form the towns of the State into unions for the purpose of employing superintendents of schools and in Section 7 of this Act (amending § 59 of Chapter 16 R.S.1916), which prescribes the duties of such union Superintendent, it was provided (¶ II (e)) that the Superintendent of Schools "shall nominate all teachers subject to such regulations governing salaries and the qualifications of teachers" as the Committee shall make and upon approval of his nominations "he may employ teachers so nominated and approved," and further in (i) that "he shall enforce or cause to be enforced all regulations" of the Committee. These provisions, without pertinent change, appear now in 20 M.R.S.A. § 161, as to the Superintendent, and § 473 as to Committee.

4. 20 M.R.S.A. § 1901 establishing minimum salaries, but failure of an administrative unit to pay such salaries results only in financial sanctions under the State subsidy system.

tions and indeed the statute (Footnote 1) presupposes that salary policies are to be included in such regulations.

█ At the outset let plaintiff's contention that he had a vested right in the statutory minimum salary for the second year of his tenure contract be laid to rest. The law does not permit that contention. The contractual relation between Teacher and Town was fixed by 2 documents,—the "continuing" (tenure) contract and the "annual salary agreement." The funds with which the school system operates are determined and made available annually. The Committee has no power to secure or to commit funds beyond the amount appropriated annually by the city or town involved. As this opinion is being written the inhabitants of the respective towns throughout the state in their annual meetings assembled are debating, approving, disapproving, the budgets submitted for school purposes. The Committees have no funds with which to operate schools and hire teachers until the electors have spoken. The annual salary agreement, separate from the tenure contract emphasizes this reality. A teacher's right to salary becomes vested only upon performance under his salary contract until payment becomes due. Our statutes dictate this and other jurisdictions have passed upon comparable situations. See Greenway v. Board of Education of City of Camden (1943) 129 N.J.L. 461, 29 A.2d 890, 145 A.L.R. 404 and Smith v. School District of Philadelphia et al. (Pa.1939) 334 Pa. 197, 5 A.2d 535, [7, 8] 538.

█ The tenure contract protects his teaching position, "free from political and personal arbitrary interference, whereby capable and competent teachers" may feel professionally secure (*Smith, supra*, [7, 8] 539), but by virtue of the fiscal relationship between a town and its Committee the tenure contract does not and cannot guarantee an unalterable rate of pay. Teacher must look to the annual salary contract for protection in that area.

█ "The permanency of tenure given by the legislature * * * carries with it no assurance against changes in salary" reasonably exercised. 47 Am.Jur., Schools, § 135, and Kacsur v. Board of Trustees of South Whittier Elementary School District et al. (1941) 18 Cal.2d 586, 116 P.2d 593, [1–6] 596.

█ Teacher's tenure contract promised him salary "in accordance with the salary schedule." Included within the salary schedule was the sanction imposable for sub-standard performance. The Committee's regulatory power authorized such sanction, limited only by the Constitutional requirement of reason, good faith, and absence of discrimination and arbitrariness. Such regulations "in effect at the date of the making or renewal of a teacher's contract of employment, are integral parts of it." Rible v. Hughes (1944) 24 Cal.2d 437, 150 P.2d 455, [1] 458, 154 A.L.R. 137.

The good faith of the Committee is not challenged.

"A differential in salaries, * * *, based solely upon differences in individual attainments and worth is not repugnant to the 14th Amendment." Morris v. Williams (CA Eighth Circuit, 1945) 149 F.2d 703, [9] 708.

See also *Rible, supra*, [7, 8] 459, Board of School Trustees, School City of Peru et al v. Moore (1941) 218 Ind. 386, 33 N.E.2d 114, [5–7] 117, 133 A.L.R. 1431, and Richards v. Board of Education of Township High School District No. 201 (1960) 21 Ill.2d 104, 171 N.E.2d 37, [4–6] 41, [8–9] 42.

Appeal sustained.

WILLIAMSON, C. J., did not sit.