**Barbara A. MURRAY, Appellant–Plaintiff,**

v.

**MONROE–GREGG SCHOOL DISTRICT, Monroe–Gregg Board of School Trustees, Brad Valentine as Superintendent of Monroe–Gregg School District and as an individual, Jerry Maple, Steven Willett and Claudia Nichols as members of the Monroe–Gregg Board of School Trustees and as individuals, Appellees–Defendants.**

No. 49A04–9012–CV–582.

Court of Appeals of Indiana, Fourth District.

Jan. 30, 1992.

Kenneth T. Murray, Daytona Beach, Fla., for appellant-plaintiff.

David J. Emmert, Indianapolis, for amicus curiae, Indiana School Boards Ass'n.

Donald L. Dawson, Brian M. House, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellees-defendants.

CONOVER, Judge.

Plaintiff-appellant Barbara A. Murray (Murray) appeals the Marion Superior Court, Civil Division, Room 1's judgment entered after a court trial in favor of defendants-appellees Monroe–Gregg School District, its Board of School Trustees, Brad Valentine, its Superintendent, and its school board members Jerry Maple, Steven Willett and Claudia Nichols, as officials and as individuals (school board) in a school principal demotion and transfer damage case.

We reverse.

This appeal presents the following issues:

1. whether Murray's summary removal as a high school principal and transfer to another school to assume teaching duties breached her contract with the school board,

2. whether the school board violated the Indiana Open Door Law, and

3. whether Murray's termination and transfer gives rise to a 42 U.S.C. § 1983 action against the school board for deprivation of a property right without due process of law.

The school board initially hired Murray as assistant principal of Monrovia High school and was generally satisfied with her work. When the former principal resigned, Murray was offered that post. She accepted. (R. 317, 453, 505). Although Murray was named principal in July, 1986, no formal contract to that effect was entered into between Murray and the school board until January, 1987. (R. 78). The 1987 contract, written on a regular teacher's contract as required by law, specified:

Said employer further agrees to pay the said teacher for his or her services under this contract as *Monrovia High School Principal.* (Emphasis supplied).

(R. 82). The contract's duration was two and one-half years. It was to terminate on June 30, 1989. (R. 82).

While that contract was in force, some school board members became concerned about Murray's performance as principal. As a result, several reviews were held by the board, some in executive session. At its request, superintendent Valentine met with Murray and her attorney, telling them the board had not yet decided whether to reassign her, but the board wanted to give Murray some options before it took an open vote on the subject. (R. 137).

At the conclusion of a later executive session, one member drafted a motion to reassign Murray. It was introduced and passed by a 3 to 2 vote at a subsequent special public session of the board on June 13, 1988. The motion provided Murray was to be reassigned immediately to a classroom teaching position at the same rate of pay. Murray then received a letter from superintendent Valentine dated the same day to that effect, but the letter contained no explanation for the board's action. (R. 140).

When the next school year began in September, 1988, the board assigned Murray as an elementary physical education teacher. Murray resigned from the Monroe–Gregg School Corporation on October 10, 1988, having accepted a principal's position in Union Mills, Indiana.

From an adverse decision after trial, Murray appeals.

■ Murray first argues the school board breached her contract because it gave her neither the statutorily-required written preliminary notice nor timely written notice she would not be retained as school principal prior to February 1 of the year in which her contract was to expire, as required by IND.CODE 20–6.1–4–17.2 and 17.3. Her transfer to a teaching assignment without such notice was a breach of her contract with the school board, she claims. To the contrary, the school board argues in effect, it was not required to so notify Murray prior to taking the action it did because she was merely transferred to a different position under her teaching contract without reduction in pay, as the board was impliedly authorized to do under the Indiana General School Powers Act. Because it was so empowered the board reasons, Murray's contract was not breached by its demoting and transferring her to a teaching assignment. In this posture, we believe the question here is whether the school board's demotion and transfer of Murray to another school as a teacher breached her principal's contract with the school board.

■ When reviewing a bench trial where findings of fact and conclusions of law have been requested by the parties and entered by the trial court, this court will not set aside the findings or judgment unless clearly erroneous. Ind.Trial Rule 52(A); *Town of Rome City v. King* (1983), Ind.App., 450 N.E.2d 72, 77. Where the evidence supports the findings and the

findings support the judgment, the judgment will be overturned only when a review of the record leaves the court with a firm conviction a mistake has been made. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215.

In pertinent part, IC 20–6.1–4–17.2 requires written notification be given by February 1st of the year in which a principal's contract expires if the school board does not intend to renew his or her contract. Also, IC 20–6.1–4–17.3 requires

> 30 days preliminary notice of the school board's intention not to renew a principal's contract to afford him or her an opportunity to discuss the situation with the superintendent and the school board, if he or she desires.

The board concedes the above-required notices were not given principal Murray prior to her demotion and transfer, but claims they were not required under these circumstances, as noted above.

Murray relies chiefly upon *State ex rel. Cleary v. Board of School Commissioners* (1982) Ind.App., 438 N.E.2d 12. In that case, a mandate action, due to declining enrollments and a court-ordered busing plan, it became necessary to reassign a number of principals, assistant principals, and school teachers. Cleary, a principal, although notified his job was in jeopardy, was not formally notified his contract would not be renewed prior to February 1st, as required by Sec. 17.2, even though he was offered a position as an assistant principal at another school. The court held Cleary's action in mandate would not lie because he had an adequate remedy at law for damages because the board had breached its contract with Cleary by not giving him Sec. 17.2's required statutory notice. Murray simply asserts she could not be demoted and transferred during her principal's contract's term, and then only if the required statutory notices had been given to prevent automatic renewal thereof for an additional year.

Clearly, the school board has the power to "employ, contract for and discharge ... principals [and] teachers", cf.

IC 20–5–2–2. Further, the definition of "teacher", as used in the school statutes includes "principals". IC 20–6.1–1–8. It is a truism, of course, a more detailed and specific statute prevails over a more general one when the two conflict. *State ex rel. Hatcher v. Lake Superior Court* (1986) Ind., 500 N.E.2d 737, 739. In this light, the statutes are quite specific as to principal's contracts.

IC 20–6.1–4–17.1, in relevant part, says

> Sec. 17.1 A contract of employment shall be entered into between the governing body of the school corporation and a principal ... subject to the following conditions:
>
> (1) The basic contract shall be the regular teacher's contract as prescribed by the state superintendent of public instruction.
>
> (2) The minimum term of the initial contract shall be the equivalent of two (2) school years; provided, however, that the term of such contract may be greater than two (2) years.
>
> (3) Such contract may be altered ... at any time by mutual consent.

[4] While the school board has the *power* under the general powers statute to demote and transfer a principal to a teaching position at the same rate of pay, see IC 20–5–2–2(2), (7), and (19), it has not been granted a specific statutory *right* to do so in the sections mentioned above dealing with the employment and termination of school principals. Thus, the school board's action here was a patent breach of its contract with principal Murray.

Under the terms of her written contract, Murray was employed "as Monrovia High School Principal" for the school year "beginning January 1, 1987, consisting of 2½ years ..., and continuing until June 30, 1989...." (R. 82). The contract was made subject to the statutes "commonly known as the Collective Bargaining Law Between School Corporations and Their Certificated Employees", and finally provided her contract could only be cancelled for "just cause", such as "incompetency, immorality, insubordination or other just

cause according to law for cancellation of contract," after hearing and appeal. In other words, Murray's contract with the school board was one for a definite term of years in a specific position.

In Indiana there are two basic types of employment relationships: (1) employment at will, *e.g.*, *Mead Johnson and Co. v. Oppenheimer*, (1984), Ind.App., 458 N.E.2d 668; and (2) employment for a definite term. *See, e.g.*, *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448, per McKinney, J., in *Colburn v. Trustees of Indiana University*, 739 F.Supp. 1268, 1285 (S.D.Ind.1990). Where, as here, there is no ambiguity in the terms of the contract, the court construes the agreement as a matter of law. *Kokomo Veterans, Inc. v. Schick* (1982), Ind.App., 439 N.E.2d 639, 643; *Spearman v. Delco Remy Div. of GMC*, 717 F.Supp. 1351, 1356 n. 2 (S.D.Ind.1989). While there is a presumption in Indiana that employment is "at will," such presumption as with most, is rebuttable. *Id.* It is rebuttable when it can be shown there is an "agreement between the employer and the employee." *Speckman v. City of Indianapolis* (1989), Ind., 540 N.E.2d 1189, 1192. Such an agreement must provide for a definite term of employment in order to alter the at will status of the employee. *Hamblen v. Danners, Inc.*, (1985), Ind.App., 478 N.E.2d 926, 928. An employment contract for a fixed term is enforceable. *Mead Johnson, supra*, 458 N.E.2d at 670.

The contract at issue here is unambiguous. It is one for a fixed term of 2½ years in a specified position, namely, as principal of Monrovia High School, not as a teacher. She could only be terminated at the contract's expiration date if the school board complied with the notice statutes above-mentioned, or "for cause", as the contract unequivocally spells out. While fine and temporary suspension for unseemly or onerous conduct were implied terms of her contract, cf. *Hamilton Heights, infra*, these implied contractual terms are not at issue here, demotion and transfer to a lesser position are.

The school board's argument it had the implied power to demote and transfer Murray under the general powers statutes without breaching Murray's contract is without merit. State law requires a principal's contract to be on a teacher's contract form approved by the state superintendent of public instruction, cf. Sec. 17.-1(1), but without question, Murray was hired as a principal and not as a teacher. Although implied terms of a contract are as much a part of it as if expressly written, *Rieth–Riley Constr. v. Auto–Owners Mutual Ins. Co.* (1980), Ind.App., 408 N.E.2d 640, 645, no terms may be implied as against the express terms of a contract, and a court cannot insert new terms therein. *Wills v. Gaff* (1963), 136 Ind.App. 21, 191 N.E.2d 41, 44. Where parties expressly contract under what circumstances an obligation may arise with reference to a certain subject matter, and the contract is entered into without fault or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature. *Smith v. Sparks Milling Co.* (1942), 219 Ind. 576, 39 N.E.2d 125, 128. Thus, Murray's express employment under the contract as "Monrovia High School Principal" prohibits an implication the school board could remove her from that post and transfer her to a teacher's position, albeit she was to be paid the same salary. Clearly, Murray has an action for breach of her principal's contract against the school board.

Finally, the Indiana School Boards Association in its amicus brief urges we support the school board's position here, claiming the Indiana General School Powers Act, IC 20–5–1–1 grants "broad authority and flexibility to school boards," citing *Board of Trustees of Hamilton Heights Sch. Corp. v. Landry* (1990), Ind.App., 560 N.E.2d 102, as authority for that proposition. In *Hamilton Heights*, a tenured teacher was fined and suspended for two days for removing the glossary from 146 science books without authority. Our First District held the board had implied authority to suspend Landry because "[t]he teacher tenure provisions do not expressly prohibit suspension of a teacher." We held

the power to suspend in such a case was necessarily implied under the general powers delegated to school boards as a reasonable disciplinary measure. While it is true school boards do have such implied powers, they may not be exercised in the manner this board did when such action violates the specific terms of a principal's hiring contract, as here.

Reversed and remanded for further proceedings consistent with this opinion.

MILLER and CHEZEM, JJ., concur.