# FOR PUBLICATION



FILED
Dec 30 2014, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JASON R. DELK**
**DANIEL J. GIBSON**
Delk McNally LLP
Muncie, Indiana

ATTORNEYS FOR APPELLEES:

**SEAMUS P. BOYCE**
**BRENT R. BORG**
**KELLEIGH I. FAGAN**
Church Church Hittle & Antrim
Fishers, Indiana

ATTORNEY FOR AMICUS
CURIAE:
Indiana School Boards Association,
in support of the Westfield Washington
School Corporation, Board of School
Trusties:

**LISA F. TANSELLE**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY HEWITT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1403-PL-130 |
| | ) | |
| WESTFIELD WASHINGTON SCHOOL | ) | |
| CORPORATION; BOARD OF SCHOOL | ) | |
| TRUSTIES OF WESTFIELD WASHINGTON | ) | |
| SCHOOL CORPORATION; DR. MARK F. | ) | |
| KEEN; DENNIS M. ELLS; TIM A. GARDNER; | ) | |
| DAVID K. MUELLER; THOMAS W. MULLINS; | ) | |
| AND TIMOTHY D. SIEFKER, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

**December 30, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Plaintiff-Appellant Jeffrey Hewitt ("Hewitt") brought claims alleging breach of contract and denial of due process[1] against his former employer, Defendants-Appellees Westfield Washington School Corporation ("the School Corporation"), Board of School Trustees of Westfield Washington School Corporation ("the Board"), Superintendent Mark F. Keen ("Keen"), and four individual Board members[2] ("the Board Members") (collectively, "the School"), after the School terminated Hewitt's employment as an elementary school principal upon discovering he had an intimate relationship with a subordinate teacher. Hewitt appeals the trial court's grant of summary judgment on both claims in favor of the School. We reverse and remand for further proceedings.

## Issue

Hewitt raises five issues on appeal, which we consolidate and restate as the following one: whether the trial court erred in entering summary judgment in favor of the School on Hewitt's breach of contract and denial of due process claims.

---

[1] See 42 U.S.C. § 1983.

[2] The parties jointly stipulated to the dismissal of a fifth Board member, who was dismissed by court order on September 14, 2012. (Appellant's App. at 8.)

**Facts and Procedural History**

On July 1, 2011, the School hired Hewitt as the principal of Monon Trail Elementary School ("MTES"). Hewitt and the School signed a contract identical to the regular teacher's contract used throughout Indiana, except the contract's term was two years (from July 1, 2011 to June 30, 2013) and Hewitt's services were listed as "Principal – MTES." (Appellant's App. at 25.) The contract included the following terms:

> It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offense recognized as just cause according to law for cancellation of contract such teacher, subject to proper appeal, shall be deemed to be dismissed and shall thereafter hold no claim for further compensation, subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect. [. . . .]
>
> It is further agreed by the parties hereto that all laws governing the employment and dismissal of teachers shall be construed to be a part of this contract.

(Appellant's App. at 25.) This contract was the sole written agreement governing Hewitt's employment.

In late October 2011, Chris Baldwin ("Baldwin"), the School Corporation's Director of Human Resources, received a phone call from Martessa Conover ("Conover"), the president of the Westfield Classroom Teachers Association. Conover reported that both a teacher and a parent told her that Hewitt was engaged in a relationship with an MTES teacher. On November 30, 2011, Baldwin met with Hewitt to investigate the matter, and Hewitt admitted that from February to November 2011 he had engaged in a consensual, sexual relationship with an MTES teacher he supervised.

3

On December 8, 2011, Hewitt met with Baldwin and Superintendent Keen to discuss Hewitt's admission. After the meeting, Hewitt submitted a letter informing the School that he planned to resign as principal on June 30, 2012, the end of the 2011-2012 school year.

On December 13, 2011, during an executive session held prior to the regular Board meeting, Keen presented Hewitt's resignation letter to the Board. Some Board Members expressed concern about Hewitt remaining as principal until June 30, 2012, but the Board nevertheless voted to accept Hewitt's resignation as submitted.

In response to the Board's concerns about the resignation date, Keen met with Baldwin, Hewitt, and Hewitt's friend and advisor, Jim Inman, on December 15, 2011. Keen showed Hewitt a new resignation letter prepared by the School's attorneys, under which Hewitt's resignation would be effective immediately. Although aware that the School would pursue contract cancellation if he did not sign the new letter, Hewitt declined to sign.

On December 19, 2011, Hewitt withdrew his prior resignation. Keen then placed Hewitt on suspension while the School sought to cancel his contract.

On December 22, 2011, Baldwin personally delivered to Hewitt a letter stating that Baldwin would recommend to the Board that Hewitt's employment as principal be cancelled immediately (the "Recommendation Letter"). Among the reasons for cancellation, the Recommendation Letter stated:

> [Y]our admitted inappropriate relationship with an educator in the school where you are a principal and supervise and evaluate staff is unacceptable.

4

Your conduct offends the morals of the community and is a bad example to the youth and staff whose ideals a building administrator is supposed to foster and elevate. Therefore, I believe your conduct impacts your ability to be an administrator. I also believe continuing your contract and employment as an administrator with the School Corporation would detract from our mission and impair the confidence of this community in our management of the staff and students.

(Appellant's App. at 214.) The Recommendation Letter also informed Hewitt that he could request a private conference with the Board, if the request was made within five days.

Hewitt timely requested a private conference with the Board via an email dated December 26, 2011. He also asked that the School "specifically identify the appropriate Indiana Code taken in pursuant of [sic] this action." (Appellee's App. at 69.) In response, the School's counsel sent Hewitt a letter on January 4, 2012 (the "Conference Letter"), informing Hewitt that "there is no statute applicable to a private conference for cancellation of your administrator's contract." (Appellee's App. at 71.) The Conference Letter also stated that, at the private conference:

Both the School Corporation representatives and you may provide reasons why your administrator contract should or should not be cancelled, but there will not be witnesses or any formal evidence procedure. You may, however, describe what witnesses would say on your behalf and you may describe what documents or records contain.

(Appellee's App. at 72.)

Hewitt and his attorney attended the private conference held just prior to the Board's January 10, 2012, meeting. The Board then voted at the meeting to cancel Hewitt's contract, but permitted him to exhaust his accumulated vacation and personal leave days. After his time off, Hewitt returned to work for the School Corporation as a teacher at three different schools until he resigned in October 2012.

5

Hewitt filed his complaint on February 1, 2012, alleging breach of contract and denial of due process. In the School's amended answer, the School denied both claims, and asserted as affirmative defenses that Hewitt failed to mitigate his damages and that the Board Members were entitled to qualified immunity.

On December 2, 2013, the School filed a motion for summary judgment. That same day, Hewitt filed a motion for partial summary judgment on liability for both claims, reserving only the issue of damages for trial. The trial court held a hearing on the motions on January 29, 2014. On February 18, 2014, the court granted summary judgment for the School on all issues and denied Hewitt's motion for partial summary judgment on liability.

Hewitt now appeals.

**Discussion and Decision**

Standard of Review

Indiana Trial Rule 56 governs motions for summary judgment. Trial Rule 56(C) provides that a trial court shall grant summary judgment for the movant "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When we review a grant or denial of a motion for summary judgment, our standard of review is the same as for the trial court. Asklar v. Gilb, 9 N.E.3d 165, 167 (Ind. 2014). The moving party must show there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Id. Summary judgment is improper if the moving party fails to carry its burden, but if it does, then the non-movant must present evidence establishing the existence of a genuine issue of material fact. Id. As our supreme court

has recently reaffirmed, Indiana's relatively high standard on summary judgment seeks to protect a party's day in court by imposing on the moving party an "onerous burden: to affirmatively 'negate an opponent's claim.'" Hughley v. State, 15 N.E.3d 1000, 1003 (Ind. 2014) (quoting Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994)).

"The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review." Asklar, 9 N.E.3d at 167 (quoting Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012)). We consider each motion separately to determine whether the movant is entitled to judgment as a matter of law. Id.

When we decide whether summary judgment was properly granted or denied, we consider only the evidence the parties specifically designated to the trial court. T.R. 56(C), (H). We construe all facts and all reasonable inferences established by the designated evidence in favor of the non-moving party. David v. Kleckner, 9 N.E.3d 147, 149 (Ind. 2014).

Breach of Contract

Hewitt first challenges the trial court's grant of summary judgment for the School on his breach of contract claim. In a breach of contract claim, the plaintiff bears the burden of proving that (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff sustained damage as a result of the defendant's breach. Duncan v. Greater Brownsburg Chamber of Commerce, Inc., 967 N.E.2d 55, 57 (Ind. Ct. App. 2012), trans. denied.

7

Hewitt's contract was written on the regular teacher's contract[3] form and stated that he would provide services as "Principal – MTES" for a term of two years from July 1, 2011 to June 30, 2013. By statute, the basic employment contract between a principal and the governing body of a school corporation "must be the regular teacher's contract" with an initial term of "at least two (2) school years." I.C. §§ 20-28-8-2(1)-(2). Hewitt's contract was therefore consistent with subsections (1) and (2). The statute also provides that the contract "may be altered, modified, or rescinded in favor of a new contract at any time by mutual consent of the governing body of the school corporation and the principal . . . ." I.C. § 20-28-8-2(3). Neither party designated any document showing that the contract was altered, modified, or rescinded in favor of a new contract.[4]

Hewitt's contract stated:

It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offense recognized as just cause according to law for cancellation of contract such teacher, subject to proper appeal, shall be deemed to be dismissed . . . .

(Appellant's App. at 25.)

In his complaint, Hewitt alleged that the School breached his contract in two ways: (1) by depriving him of a hearing and (2) by failing to establish that his conduct constituted an offense recognized as just cause for cancellation of an employment contract. Hewitt

---

[3] By statute, the regular teacher's contract is provided by the superintendent, I.C. § 20-28-6-3, and "must be used statewide without amendment." I.C. § 20-28-6-5.

[4] When deposed, Keen stated that Hewitt's contract had not been modified because "[i]t's the way it's always been done in this district. We don't have these lengthy administrative contracts like some districts do. It's just simplistic that way." (Appellant's App. at 187.)

8

argues that the trial court erroneously granted summary judgment in favor of the School because the School failed to affirmatively negate both allegations of breach. Because it is dispositive of his breach of contract claim, we address only Hewitt's argument regarding opportunity for a hearing.

*Opportunity for a Hearing.* Hewitt argues that the "evidence designated to the trial court demonstrates that [the School] clearly failed to provide Hewitt with a 'hearing' prior to termination as required by the [c]ontract." (Appellant's Br. at 18.)

The contract does not define the scope of the "hearing" required prior to termination for cause. However, by its express terms, Hewitt's contract was "subject . . . to the provisions of law concerning the employment and dismissal of teachers which are in force and effect" and "all laws governing the employment and dismissal of teachers shall be construed to be a part of this contract." (Appellant's App. at 25). Accordingly, the statutes governing the cancellation of teacher contracts – Indiana Code chapter 20-28-7.5 – are incorporated into Hewitt's contract. See Chambers v. Cent. Sch. Dist. Sch. Bd., 514 N.E.2d 1294, 1298 (Ind. Ct. App. 1987) (holding that, where the written contract between a principal and a school corporation was the regular teacher's contract that incorporated the provisions of law concerning the dismissal of teachers, "the protections afforded [the principal] by the written contract are identical to those contained in [the statutes pertaining to cancellation of teacher contracts]" and the principal "contracted for those provisions").

Indiana Code section 20-28-7.5-2 affords a teacher a specific process prior to immediate cancellation of his or her contract for "just cause."[5] The process includes a private conference with the governing body prior to the body's final decision. I.C. §§ 20-28-7.5-1(e)(7) & -2(g). At the private conference, the governing body must:

(1) Allow the teacher to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation. Any evidence presented at the private conference must have been exchanged by the parties at least seven (7) days before the private conference.

(2) Consider whether a preponderance of the evidence supports the cancellation of the teacher's contract.

I.C. § 20-28-7.5-2(g). The "opportunity for hearing with benefit of legal counsel" for which Hewitt and the Board contracted thus includes the opportunity to be heard and present evidence at a private conference held before the governing body in accordance with Indiana Code section 20-28-7.5-2(g).

Although Hewitt's contract incorporates the provisions of chapter 20-28-7.5, the School argues these provisions do not apply to Hewitt because (1) he is a principal, not a teacher, and (2) there is no statutorily-defined process for immediate cancellation of a principal's contract. See I.C. § 20-28-8.[6] In the absence of statutory guidance, the School

---

[5] In its brief, the School makes no argument that Hewitt's contract was cancelled for incompetency, immorality, or insubordination. Moreover, the Board Members repeatedly insisted throughout their deposition testimony that Hewitt was not terminated for immorality, but for just cause because his relationship compromised his ability to effectively lead the building.

[6] Indiana Code chapter 20-28-8 governs school administrator contracts, including superintendents and principals. Although the chapter provides for immediate cancellation of superintendent contracts for cause, I.C. § 20-28-8-7, it does not enumerate reasons or a procedure for immediate cancellation of a principal's contract (unless the parties mutually agree). Rather, Code sections 20-28-8-3 and -4 provide only a process for nonrenewal of a principal's contract at the end of the contract term, if proper notice is given. Because the School did not seek nonrenewal under the statute, the only avenue through which the School could immediately cancel Hewitt's contract was for cause under the contract terms. See Murray v. Monroe-Gregg

10

argues "that the standard for canceling an administrator contract is even less demanding" than for canceling a teacher contract (Appellee's Br. at 15), and that the Board may exercise its "broad statutory power" to determine what procedures to use when firing a principal. (Appellee's Br. at 16.) In other words, the School argues that the Board may choose to provide Hewitt with a lesser hearing than would be afforded a teacher under the regular teacher's contract.[7]

We disagree that a principal whose contract is written on the regular teacher's contract is entitled to a lesser hearing than would be afforded a teacher with the same contract terms. It is true that the statutes imbue the School Board with the power to "[e]mploy, contract for, and discharge . . . principals[.]" I.C. § 20-26-5-4(8)(A). However,

---

Sch. Dist., 585 N.E.2d 687, 691 (Ind. Ct. App. 1992) (holding that a principal employed on the regular teacher's contract "could only be terminated at the contract's expiration date if the school board complied with the notice statutes [for principal contracts], or 'for cause,' as the contract unequivocally spell[ed] out").

[7] To bolster its argument that a different standard should apply to principals, the School argues that Hewitt's employment actually existed subject to two separate agreements: the written regular teacher's contract, which applied to Hewitt only as a teacher, and an unwritten "administrator's contract," which applied to his employment as principal. The School asserts that the Board only cancelled Hewitt's unwritten administrator contract, not his written teacher contract. Thus, the School argues that it was not required to follow the express terms of the written contract in cancelling Hewitt's employment as a principal.

The School relies primarily on Chambers, 514 N.E.2d 1294, for the School's rather novel argument that an unwritten administrator contract exists simultaneously with a regular teacher's contract. In Chambers, the principal had a definite, written principal's contract in the form of the regular teacher's contract. 514 N.E.2d at 1295. The court in Chambers clearly held that the written contract terms governed the principal's employment and termination as a principal. Id. at 1298. Thus, Chambers does not support the School's theory that Hewitt had an unwritten administrator's contract and that an unwritten process – to be determined by the Board in the absence of a statute – governed his termination as a principal.

The School also states that the School's reading of Chambers "explains why Hewitt continued as a regular teacher after his administrator contract was canceled." (Appellee's Br. at 14.) Given that the Board voted to cancel Hewitt's contract, and assuming that Hewitt did not sign a new teaching contract, it appears from the record that the School continued to employ Hewitt as an at-will employee. See Murray, 585 N.E.2d at 691 (discussing definite term and at-will employment in the context of school principals).

11

this power does not override the express terms of Hewitt's employment contract, which clearly incorporate the statutory protections afforded to teachers. See Chambers, 514 N.E.2d at 1298.

The School also argues that Hewitt was entitled to a lesser hearing because Hewitt admitted to "the conduct that formed the basis for his termination." (Appellee's Br. at 26.) The thrust of the School's argument is that an evidentiary hearing was unnecessary because Hewitt admitted to the conduct and therefore the School had nothing to prove.

The School's argument requires us to accept that Hewitt's conduct unquestionably constituted just cause for contract cancellation and that it would be futile for Hewitt to submit evidence to refute the School's allegations. Our supreme court has long held that "good or just cause" for cancellation of a teacher's contract means "any ground which is put forward in good faith, and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system." Bd. of Sch. Trs. v. Moore, 33 N.E.2d 114, 116 (Ind. 1941). The School argues that Hewitt's conduct clearly meets this test because "[c]ommon sense dictates there are inherent problems with a supervisor having a sexual relationship with a subordinate, and the Board was within its discretion to so conclude." (Appellee's Br. at 18.)

Although we do not condone Hewitt's behavior, we observe that "common sense" may dictate there are "inherent problems" with many relationships and circumstances that could exist within school districts and, from the outside, create an appearance of impropriety or apparent conflict of interest, such as: principals and other administrators who supervise their children's teachers; principals, administrators, and teachers who

12

educate and supervise their own children or children of close relatives and personal friends; school board members' children or close relatives who are employed by the school district; school board members and administrators whose spouses serve as educators or administrators in the same district; or school board members whose children or close relatives are eligible for or receive scholarships awarded by the board. Despite their "inherent problems," none of these relationships regularly constitute just cause for contract cancellation, presumably because they do not always interfere with the "school board's task of building up and maintaining an efficient school system." Moore, 33 N.E.2d at 116.

Hewitt does not dispute that he engaged in a consensual, sexual relationship with a subordinate teacher from February to November 2011 and that the relationship terminated by mutual agreement and without any claim or suggestions of a hostile work environment. However, to cancel Hewitt's contract for just cause, the School was required to show that cancelling Hewitt's contract for engaging in that type of relationship, as opposed to any other relationship presenting an apparent conflict of interest, was a decision "not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system." Moore, 33 N.E.2d at 116.

Moreover, the contract terms and the incorporated statutes provide a process for making a just cause determination. The contract states that a teacher's contract may be terminated "in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offense recognized as just cause . . . ." (Appellant's App. at 25 (emphasis added).) The private conference, which must be held "before the governing

13

body makes a final decision," I.C. § 20-28-7.5-2(g) (emphasis added), requires the governing body to "[c]onsider <u>whether a preponderance of the evidence supports the cancellation</u> of the teacher's contract." I.C. § 20-28-7.5-2(g)(2) (emphasis added). The very purpose of the hearing contemplated by the contract and described by the statute, therefore, is to establish just cause. To hold that just cause existed without first conducting the hearing would render the contract terms meaningless and thwart the legislative purpose behind the statute, that is, to provide teachers certain due process protections prior to contract cancellation.

Therefore, we disagree that Hewitt's admission that he engaged in a consensual sexual relationship with a subordinate teacher relieved the School of its contractual duty to provide the hearing described in Indiana Code section 20-28-7.5-2(g).

*Hewitt's Private Conference.* With the appropriate standard in mind, we turn to the designated evidence regarding the private conference Hewitt received. The designated evidence shows that, after Baldwin presented Hewitt with the Recommendation Letter, Hewitt requested a private conference. In the follow-up Conference Letter, dated January 4, 2012, the School's attorneys informed Hewitt:

> The private conference is an <u>informal process</u> intended to give you an opportunity to respond to the reasons for the recommended cancellation of your employment as an administrator. It is not a trial with subpoenas, witnesses, exhibits, etc.
> The private conference will occur in executive session. In addition to you (and your representative if you choose to bring one), present will be the board members, representatives of the School Corporation administration, and general counsel to the Board. [The Board's attorney] will facilitate the private conference. Representatives for the School Corporation administration will be given the opportunity to provide the reasons for the recommended cancellation of your administrator contract. You will then

14

have an opportunity to respond to the recommendation for contract cancellation. [. . . .]

<u>Both the School Corporation representatives and you may provide reasons</u> why your administrator contract should or should not be cancelled, <u>but there will not be witnesses or any formal evidence procedure. You may, however, describe what witnesses would say on your behalf and you may describe what documents or records contain</u>. If you are represented at the private conference, you may make a personal statement in addition to any information your representative presents. Following the presentations . . . (as well as any Board questions), the Board will have an opportunity to deliberate . . . .

(Appellee's App. at 72) (emphasis added).

Hewitt attended a private conference with the Board on January 10, 2012, at which he was represented by counsel. Overall, the designated evidence regarding the private conference is scant. Keen presented an opening statement and the Board's attorney conducted the meeting. In addition, Hewitt's counsel made a presentation and argument on Hewitt's behalf. The content of these presentations to the Board is unclear from the record.

However, the Conference Letter purports to deny Hewitt the procedures contained in Indiana Code section 20-28-7.5-2, including the opportunity "to present evidence to refute the reason or reasons for contract cancellation and supporting evidence provided by the school corporation." I.C. § 20-28-7.5-2(g)(1). In the absence of a more detailed record regarding the private conference, the Conference Letter alone establishes a genuine issue of material fact as to whether Hewitt was denied the hearing to which his contract entitled him. Therefore, the designated evidence shows that the School has not met its burden to affirmatively negate Hewitt's claim. Accordingly, the trial court erred in granting summary judgment in favor of the School on Hewitt's breach of contract claim.

15

<u>Due Process</u>

In addition to his breach of contract claim, Hewitt alleges that the School denied him procedural due process in violation of 42 U.S.C. § 1983. The gravamen of Hewitt's Section 1983 claim is the same as his breach of contract claim: that he was denied certain procedural safeguards, including an evidentiary hearing, when he was removed as principal. For the same reasons that genuine issues of material fact exist regarding Hewitt's breach of contract claim, genuine issues of material fact exist regarding his Section 1983 claim. Further, because the School's affirmative defense of qualified immunity requires factual determinations regarding whether or to what extent Hewitt was denied these procedural safeguards, we do not reach that issue at this time.

**Conclusion**

The School has failed to carry the "onerous burden" of showing that there are no genuine issues of material fact and that the School is entitled to a judgment as a matter of law on Hewitt's breach of contract and due process claims. Accordingly, the trial court erred in granting summary judgment in favor of the School. We therefore remand for further proceedings.

Reversed and remanded.

NAJAM, J., and PYLE, J., concur.

16